No. 35,968

S. S. PHILLIPS, *Appellant*, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Appellee*.

(142 P. 2d 704)

Opinion filed November 6, 1943.

*William B. Hess*, of Pratt, argued the cause for the appellant.

*D. C. Martindell*, of Hutchinson, argued the cause, and *W. D. P. Carey, W. E. Brown, E. B. Brabets*, all of Hutchinson, *R. F. Crick* and *M. C. Bucklin*, both of Pratt, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action against an insurance company

to recover for the loss of a bull. No special findings of fact were returned by the jury. Its general verdict was for the defendant and plaintiff appeals.

Appellant first charges the trial court erred in refusing to compel defendant to elect between two defenses which appellant claimed were inconsistent. Appellant argued he could not ascertain from the answer whether appellee was defending on the ground no valid contract of insurance had ever been made or upon the ground a valid policy was issued and voided by appellant. The ruling requires not only an examination of the answer but of the amended petition which was framed in two separate counts.

The first count of the amended petition insofar as here material, in substance, charged:

Appellee's local agents at Pratt were general agents with power and authority to receive and accept proposals for insurance and to receive, collect and receipt for insurance; on June 16, 1941, appellant orally proposed to such agents for insurance against the loss by death of a thoroughbred bull named Sequoia Anxiety 1st in the sum of $2,000 for a term of one year at a premium of $120; the local agents orally accepted the proposal and agreed with appellant the insurance would be effective immediately upon payment of the premium; appellant relied upon the representation that the policy would be effective immediately and paid the premium therefor on June 16, 1941, which appellee accepted and retained.

The amended petition pleaded no other terms of the contract of insurance which it alleged was to be effective immediately and no copy of an application for the policy was attached to the petition.

The second count made the allegations of the first count a part of the second count. It alleged that on June 16, 1941, and at all times prior thereto the animal was in sound condition and health and remained so until June 20, 1941, when it suffered accidental injuries from which it died October 11, 1941. In this count it was also alleged the appellee insurance company was notified by its agents by telegraph on June 16, 1941, of the incurring of the insurance and that the company accepted the proposal for insurance but did not forward the policy until June 26, 1941. It was further alleged that by agreement with the agents and in keeping with former practice the policy was placed by the agents in their safe with appellant's other policies. The policy was attached to and made a part of appellant's second cause of action. The second count further alleged appellant

had performed all conditions precedent required of him in the premises and that the policy of insurance should be reformed in conformity with the insurance agreement made with appellee's agents.

Insofar as the motion to elect is concerned it will be sufficient to notice only a part of the answer to the respective counts of the amended petition. The answer to the first count contained appellant's written application dated June 3, 1941, for the policy and denied the making of the alleged oral contract. The answer alleged appellant had the application in his possession for some period of time prior to signing it. At the top of the application was contained the following:

"This is not a binder, but merely an application for insurance which is effective only upon delivery of policy while the animal or animals are in absolute health."

The application also provided:

"It is agreed that the agent of the company who takes this application is a special agent with limited authority and is not authorized to make any written or oral contracts, or to accept any risk, or to bind the company by any oral or written statement, or to waive, alter, change or modify anything contained in this application or the policy which may be issued thereon."

Another paragraph of the application reads:

"It is agreed that this insurance shall not be in force or effect until and unless this application shall be accepted by the above named insurance company, policy of insurance issued by said company, and the premium paid thereon and policy delivered to me/us while the animal or animals covered by said policy is/are in good health and entirely free from sickness or injury."

The answer expressly denied the general agency of the local agents to make an oral contract such as that alleged in the first count of the amended petition and further alleged appellant was advised of that fact. The application contained answers of appellant to various questions relative to the animal to be insured. The answer charged that certain specified answers to such questions constituted false and fraudulent representations. It also alleged appellant had failed to notify the insurance company of the injury to the bull as required by the policy and that the animal was already injured on the 16th day of June, 1941, when appellant claimed to have made the oral contract and that a fraud was thereby perpetrated upon both the company and its agents. It was further alleged appellant had failed to comply with the terms of the policy which required him to take proper care of the animal after its injury.

The answer to the second count of the amended petition, in addi-

tion to denying that a binding oral contract was made, alleged that if an oral contract was made appellant accepted the delivered written contract of insurance as a compliance with his oral contract. The answer set out the following provisions contained in the policy:

"In consideration of the statements, agreements and warranties contained in the application or applications for insurance upon which this policy is based and which are hereby referred to and made a part of this contract and subject to the conditions, stipulations and limitations hereinafter specified; and in further consideration of the payment by the assured of $120.00 premium, does insure, etc. . . .

"In case of any misrepresentation, fraud or false swearing by the assured, touching any matter relating to any animal or animals insured hereunder, whether before or after a loss, this policy shall be entirely voided as to such animal or animals, and this company shall not be liable for any claim on account of the death of such animal or animals."

The answer designated the false and fraudulent statements and warrants contained in the application upon which appellee relied as voiding the policy. The answer alleged appellant had not served on appellee notice of the injury to the animal in conformity with the provisions of the policy, the provisions being set out, and that the first information appellee received concerning the injury was after the death of the animal on October 11, 1941, and that it had no opportunity to investigate or inform itself of any injuries to the animal until after its death.

It was further, in substance, alleged:

The animal received its injuries prior to the acceptance and delivery of the policy to appellant and that appellee was not liable thereon; appellee tendered its check in the sum of $123.15 as a refund of the premium paid by appellant together with the interest thereon; appellant had not pleaded facts sufficient to warrant a reformation of the policy attached to his petition.

We find no error in the order overruling the motion to require an election of defenses. The motion was made before appellant introduced his evidence. His petition was framed in two counts. The first count alleged an oral contract for insurance which it was claimed was made effective immediately as of June 16, 1941. The answer to that count denied an oral contract had been made. The second count pleaded a written contract of insurance and sought its reformation in accordance with the alleged oral contract. As previously indicated the petition alleged no terms or provisions of the alleged oral contract of insurance except that the policy was to be effective immediately. If such a valid oral contract was made on

June 16, 1941, it, of course, contravened the terms and provisions of the previously signed written application and also the written policy, both of which made the policy effective only upon payment of the premium and delivery of the policy while the animal was in good health and free from injury. The insurance company was required to answer the second count. For its answer to that count it again denied the making of an oral contract and in substance further alleged that if such a contract was made, then the written policy when delivered was accepted by appellant as a compliance with the oral contract. It also alleged it was not liable on the written policy by reason of false and fraudulent statements and warranties made by appellant in the written application dated June 3, 1941, and by reason of the fact the animal was already injured at the time of the alleged oral contract and also by reason of appellant's subsequent violation of certain specified provisions of the policy.

The test of inconsistency in defenses is whether proof of one necessarily disproves the other. (*Pinegar v. Webster*, 145 Kan. 44, 64 P. 2d 546.)

In the instant case the alleged inconsistent defenses were not pleaded in answer to the same count. The defenses pleaded were to the separate counts of the amended petition and they present no inconsistency. If the jury concluded the oral contract was not entered into, then, of course, appellant failed entirely on his first count and also on his second count insofar as that count sought reformation of the written policy to conform to the alleged oral contract. Under such a conclusion of the jury appellant could recover only, if at all, on the written policy pleaded in the second count. Manifestly, appellee was entitled to assert any defense or defenses it might have to the second count. None of the defenses pleaded thereto was inconsistent. In view of this conclusion it is wholly unnecessary to discuss the theoretical question whether it would have constituted reversible error *in this case* not to sustain appellant's motion prior to trial if the defenses had been inconsistent.

Appellant next insists the policy was effective June 17, 1941, the date on which appellee's agents accepted the premium, which was retained by appellee until after it received notice of the loss. He insists the animal was injured on June 20, which was his testimony, and that there is no evidence it was injured on or prior to June 17. There was some testimony which tended to show, or from which it might be inferred, it was injured on or before June 17, but we shall

pass that subject for the moment. Appellant pleaded the oral contract was made June 16, and first so testified, but later stated it was made June 17. The court permitted him, over objection, to make the petition conform to his proof. His written application of June 3, 1941, was for a $2,500 policy. Appellee's agents notified him on June 16 that the insurance company had sent a policy, but had reduced the amount to $2,000. It is conceded appellant flatly rejected that policy on June 16. Appellant, however, came to see the agents on June 17 and after some discussion he agreed to accept a policy for $2,000. The agents had returned the policy to appellee June 16 stating they were returning it for flat cancellation because appellant had refused the reduced insurance. On June 17 the agents wired appellee at its home office as follows:

"Return policy 140386 Phillips as we resold him this morning we have collected premiums you will receive policy and letter tomorrow. Do not cancel."

Some correspondence followed between appellee and its local agents relative to why appellant had not accepted the $2,000 policy when it was first sent. We do not deem it necessary to narrate that correspondence except to state that on June 24 appellee, in substance, notified its local agents it had held up the reissuing of the policy pending receipt of an explanation as to why appellant had not accepted the policy as originally issued. In the same letter appellee, in substance, advised its agents that, with the understanding the animal was at the present time in good health and insurable condition, the contract had been rewritten under the same date. The agents were, however, requested to satisfy themselves that the animal was in good health and insurable condition when they delivered the policy.

Assuming, without deciding, that the policy became effective June 17, as contended by appellant, it still remained a question for the jury to determine whether the policy was obtained by means of false and fraudulent representations or whether appellant subsequently violated the terms and conditions of the policy. The trial court instructed the jury on plaintiff's theory and contention that an oral contract was made on June 17. It likewise instructed on defendant's theory and contention that no oral contract was made. The evidence on that point was conflicting and the question whether an oral contract was entered into to make the policy effective as of June 17 was submitted to the jury for its determination. Appellee objected

to the instruction on the subject of an oral contract but appellant made no objection to that instruction or any other.

Appellant contends no objection to instructions is necessary when they in fact incorrectly state the issues and the law. The contention assumes the instructions were erroneous. One of appellant's present complaints with the instruction pertaining to the oral contract is that the instruction required the jury to find the bull was injured after the delivery of the policy on June 27. We think that is a strained construction. While the instruction in that particular respect might have been more clearly drawn, we think a reasonable construction thereof required that the injury occur after June 17, the date of the alleged oral agreement, to which that instruction referred. It would appear appellant's counsel would have objected to so important an instruction at the time of trial if he had then interpreted the instruction as he does now. We may also state it is not now contended appellant's or appellee's counsel, when arguing the case to the jury, interpreted the instruction as appellant's counsel now seeks to interpret it.

Appellant makes some other complaints concerning the instructions given and also contends the court erred in refusing certain requested instructions. After careful examination and consideration of the record including the testimony pertaining to the authority of the local agents we have no hesitancy in concluding the instructions fairly covered the issues in the case and that no reversible error was committed in refusing the requested instructions.

It is urged the court erred in admitting the applications for insurance. It appears two applications were signed by appellant on June 3, 1941. Only one application is material now. It is the application which appellee attached to its answer. The objection to the application was that it had been materially altered after appellant signed it. The objection was overruled subject to explanation of the alteration. The alteration consisted in striking out the figure, $2,500, in the application and substituting a pencil notation of $2,000 at the time the application was considered and acted upon at the home office of appellee. Appellee's witness, its general agent, testified concerning the alteration. He testified the pencil notation was placed there in his office when the amount of insurance the company was willing to write on this animal was determined. The ruling was proper. It would have constituted error to exclude the application. Appellant, after refusing the $2,000 policy on June 16,

agreed to take a $2,000 policy on June 17, and that is the policy which he asked to have reformed. He did not ask to have the policy reformed as to the amount of the insurance but only to make it show it was effective as of June 17, the date upon which he claimed to have made the oral contract for $2,000 and on which date he paid the premium on a $2,000 policy.

As previously stated no special questions were submitted to the jury. Strange as it might seem the general verdict of this rural jury was in favor of a foreign insurance company and against a resident owner of livestock. A general verdict is one by which a jury pronounces generally on all issues of fact submitted to it for determination (G. S. 1935, 60-2918) and on review this court must assume that all controverted questions of fact were resolved in favor of the prevailing party. The general verdict embraced the following controverted issues: Whether an oral contract was made; whether the policy was obtained by means of false and fraudulent representations; and whether appellant subsequently violated the terms and conditions of the policy.

It will serve no useful purpose to detail the facts relative to these various issues of fact. One example will suffice. In the application dated June 3 appellant represented the animal was kept in a private stable. On the next day, June 4, the animal was removed to an open range fifteen miles west of the private stable. It was practically cut to pieces while trying to get over a barbed-wire fence. A veterinarian first treated the animal on the evening of June 21 and found it in bad condition. He did not think there was much chance to save it. He treated the bull only one time later on June 28. He stated it looked like the bull had gotten "straddle of the fence and sawed back and forth." He tapped the animal in eight or ten places. He would not say positively how long the injury existed before he first saw the bull on June 21 but thought it had probably existed from twenty-four to forty-eight hours. There was other testimony the infection probably set in from forty-eight hours to four or five days after the injury.

W. H. Timmons, general agent for the insurance company, testified in substance: The company relied upon the representations in the application in issuing the policy; the policy would not have been issued on a herd sire which was permitted to run on an open range; the reason the company refused to write insurance on such an animal on an open range was that the danger of injury was too great and

that in case of injury or illness there was seldom anyone around to detect it in time to administer proper care and treatment.

In view of the record we would not be justified in reversing the judgment or in remanding the cause for a new trial.

The judgment is affirmed.