**SECURITY INSURANCE COMPANY OF NEW HAVEN, Appellant,**

v.

**Virgil H. JOHNSON and Rex Bratcher, d/b/a Johnson-Bratcher Construction Co., Appellees.**

**No. 6166.**

United States Court of Appeals Tenth Circuit.

Feb. 15, 1960.

Rehearing Denied March 24, 1960.

William P. Thompson, Wichita, Kan. (A. W. Hershberger, Richard Jones, H. E. Jones, Jerome E. Jones, Robert J. Roth, William R. Smith, Wichita, Kan., on the brief), for appellant.

Malcolm Miller, Wichita, Kan. (George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris and Gerald Sawatsky, Wichita, Kan., on the brief), for appellees.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and CHRISTENSON, District Judge.

CHRISTENSON, District Judge.

Security Insurance Company of New Haven, appellant herein, sought to recover as plaintiff in the United States District Court for the District of Kansas from appellees Virgil R. Johnson and Rex Bratcher, doing business as Johnson-Bratcher Construction Co., the amount it theretofore had paid in settlement of a state court judgment entered against the Missouri Pacific Railroad Company under the Federal Employers' Liability Acts, 45 U.S.C.A. § 51, for the death of one Kennedy, a railroad worker.

Subrogated to the rights of the railroad company by this payment, liability for which it had assumed under a contract with the Morrison Grain Company, appellant contended in the federal court that appellees' "active" negligence in installing a grain dump under the railroad track had been the basis of the recovery against the railroad in the state court and, since the railroad's fault had been only "passive", the right of indemnity existed. This theory was presented under the first claim of the complaint. In its second claim appellant asserted that it, as subrogee of the Morrison Grain Company, was entitled to damages by reason of alleged breaches of the agreement between Morrison Grain Company and the appellees.

The trial court granted summary judgment in favor of the appellees and dismissed the complaint. Its jurisdiction, based on diversity of citizenship, was unquestionable.

Appellants have taken a timely appeal to this court, maintaining that appellees were not entitled to judgment as a matter of law, but that a trial on the merits was required to resolve the issues between the parties. That if there were genuine issues of material fact unresolved on the record before the trial court this must be so, is a proposition so repeatedly exemplified and documented in prior decisions of this court that it now need be only mentioned.

The appellant insurance company and the contractors-appellees were the only parties to the action in the federal court. But recourse must be had to the following background circumstances if the problems between them and the welter of names and relationships necessarily involved in the foregoing statement of the case are to be meaningful.

The appellees contracted to build an elevator for the Morrison Grain Company in Saline County, Kansas. The contractors' obligation included proper installation of a pit or hopper beneath a side track of the Missouri Pacific Railroad Company for use by Morrison as a grain dump. The railroad required a side track agreement or lease from the grain company indemnifying it against liability for personal injuries to its workmen, or others, in any manner resulting from the construction or operation of the facilities under the track. Kennedy, an employee of the railroad, was killed when he fell into the partially uncovered pit. Thompson, trustee for the railroad, was sued by Kennedy's administratrix, in the District Court of Sedgwick County, Kansas. The railroad sought to interplead appellees and to secure indemnification by reason of their claimed primary negligence. Appellees' motion to quash service of summons was granted by the state

trial court, and sustained on appeal. Kennedy v. Thompson, 179 Kan. 532, 297 P.2d 210. The case was tried between Kennedy's administratrix and the railroad, and was defended on behalf of the railroad by the present appellant because of the contractual obligation of its assured, the grain company. The action culminated in a substantial judgment against the railroad company, which appellant paid, taking a subrogation receipt therefor.

It is not questioned that appellant became subrogated to the railroad's rights, if any there were, against the appellees for indemnity.

■ The general rule is that, in the absence of express contract, there is no contribution between joint tort-feasors. But where they are not *in pari delicto,* and their negligence is substantially different not merely in degree but in character, it is generally recognized that indemnity may be awarded. Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712; United States v. Acord, 10 Cir., 1954, 209 F.2d 709, certiorari denied 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115; Peak Drilling Co. v. Halliburton Oil Well Cement Co., 10 Cir., 1954, 215 F.2d 368; Thomas v. Malco Refineries, Inc., 10 Cir., 1954, 214 F.2d 884; Lee Way Motor Freight v. Yellow Transit Fr. Lines, 10 Cir., 1957, 251 F.2d 97.

Concentration in the arguments on the active-passive idea must not becloud the more fundamental basis of the doctrine which, as demonstrated by the authorities cited above, has been found to have application also by reason of otherwise described differences turning upon primary and secondary liability, actual fault as distinguished from that which is imputed or constructive, knowledge or lack of knowledge, or the nature of the respective duties to the persons injured or between the parties charged.[1] As historically traced by the Supreme Court in the Washington Gaslight Co. case, such distinctions had their roots in concepts of relative delinquency or culpability. The fundamental limitation as applied by this court in United States v. Acord, supra, is that the character of the negligence must be essentially different; and, of course, indemnification must be rationally justified upon equitable considerations.

■■ Liability to indemnify must be determined in accordance with the laws of the place where the acts or omissions giving rise to it occurred, which in this case was Kansas. United States v. Acord, supra. The rule that there can be no contribution between joint tort-feasors is there recognized. Rucker v. Allendorph, 102 Kan. 771, 172 P. 524. The exception to that rule allowing indemnity under certain circumstances also is recognized in Kansas. Counsel for appellees states that the Kansas Supreme Court has not decided any case involving purely the "active-passive" relationship, and we have found none in that court presenting a fact situation precisely in point. But see Chicago, Rock Island & Pacific R. Co. v. United States, D.C.D. Kan.1955, 129 F.Supp. 637.

■ It has been held by the Kansas Supreme Court, however, that an employer may be entitled to indemnification from his employee when called upon to respond to the claims of a third party under the doctrine of respondeat superior, Fenly v. Revell, 170 Kan. 705, 228 P.2d 905; and that a municipality liable to an injured pedestrian by reason of its non-delegable duty to maintain its streets and walks is entitled to indemnity from the abutting property owner causing the dangerous condition. City of Topeka v. Central Sash & Door Co., 97 Kan. 49, 154 P. 232; City of Fort Scott v. Pen

1. In one sense activity and passiveness are not determinative factors, since these terms literally may suggest merely differences in degree or distinctions between acts of omission and acts of commission. Yet the related expressions frequently are used to describe differences of various sorts in the contrasted characters of negligence which warrant indemnity, and they will be used hereafter in that decisive context.

Lubric Oil Co., 122 Kan. 369, 252 P. 268; City of McPherson v. Stucker, Stucker & Strachan, 129 Kan. 262, 282 P. 703.

We perceive no real difference in the position of the railroad, or its subrogee here, and that of a municipality entitled in Kansas to indemnity from an abutting property owner actively creating a hazard which the municipality negligently fails to discover and correct. The inescapable basis and rationale of the Kansas decisions seem applicable to the case at bar. Both the carrier and the municipality would have had the duty to use reasonable care to discover the unsafe or defective condition.

Appellant has sought to draw a distinction between the two classes of cases by referring to the duty of the municipality as "non-delegable." Thus was the carrier's duty described in Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 1953, 201 F.2d 408, 37 A.L.R.2d 1399, the controlling facts of which seem indistinguishable on the point from those of the case before us. The Eighth Circuit cites with approval the following from A.L.I. Restatement, Restitution, § 95:

> "Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

See also Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695; City of Astoria v. Astoria & C. R. R. Co., 67 Or. 538, 135 P. 645, 49 L.R.A.,N.S., 404; Waylander-Peterson Co. v. Great Northern Ry. Co., supra; Chicago Great Western Railway Company v. Casura, 8 Cir., 1956, 234 F.2d 441.

By reason of prior related decisions of the Supreme Court of Kansas, the principles generally applied in other jurisdictions to the situation now before us, and our considered view that as to such a situation the Kansas courts would recognize those principles, we have concluded that summary judgment should not have been granted unless the judgment in the prior action precluded further inquiry in this proceeding.

Appellees insist, and the trial court apparently was persuaded, that the state court judgment is res adjudicata not only as to the negligence of the railroad, but concerning the "active" character of that negligence. It says that the plaintiff in the state court offered proof of the acts of active negligence alleged, including knowledge on the part of the railroad of the dangerous condition; that the trial court instructed on all the allegations of negligence; and that the jury returned a general verdict in favor of the administratrix and against the railroad. Under these circumstances, it is contended, the general verdict imported a finding "against the railroad upon all issues in the case, which in the instant situation means a finding that the railroad was guilty of active negligence."

It may not be questioned that the judgment of the state court and the facts which by the record are shown to have been determined there were, and are, binding upon the appellant. Not only did it have actual notice of the proceedings, but it participated in them as required by the policy of insurance it had issued to the Morrison Grain Company for the benefit of the railroad. Moreover, appellant in the federal court premises its right to indemnity upon the state court judgment, to establish its subrogor's liability and the amount which it paid in satisfaction thereof and for which it seeks reimbursement. See City of Fort Scott v. Pen Lubric Oil Co., supra; City of McPherson v. Stucker, Stucker & Strachan, supra.

The question, however, is not what might have been litigated in the

state court action, but what was actually decided. The general principles of res adjudicata and collateral estoppel by judgment are well recognized. Where a second action between the same parties or their privies is on the same cause of action as the first, the final judgment in the former action is conclusive as to all matters actually litigated and as to any other issue, claim or defense which might have been presented in that action. But a judgment in a prior action between the same parties or their privies which was not based upon the same claim or cause of action as is the second one, will operate as an estoppel only as to those common issues, claims or defenses which were actually litigated and determined in the first action. Happy Elevator No. 2 v. Osage Const. Co., 10 Cir., 1954, 209 F.2d 459; Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532; Washington Gaslight Co. v. District of Columbia, supra.

Before further examining these principles and focusing attention upon their application to the situation involving no specific determination on the record of which of several theories of recovery the jury adopted, it is necessary to notice a side controversy between the parties concerning the sufficiency of the record before us.

Appellees maintain that evidence was received in the state proceeding tending to show that the railroad had actual notice of the dangerous condition allegedly created by appellees. Appellant unequivocally asserts that there was a complete absence of any such evidence. If this point were crucial and the record were insufficient as contended, we would have adequate power under rule 75, F.R. Civ.P., 28 U.S.C.A., to avoid a miscarriage of justice on that account. But the transcript of the evidence in the state court already has been designated and filed with this court. If appellant had caused it to be reproduced verbatim in the printed record it would not have helped appellees. The detailed evidence before the jury in the state court could not have enabled the federal trial court, nor does it permit us, to determine upon exactly what alleged ground or grounds of negligence the jury found the railroad liable; only that it found it negligent in one or more of the ways charged in the complaint, and that such negligence proximately caused or contributed to Kennedy's death.

It is clear that the action brought in the state court was based upon the Federal Employers' Liability Acts, 45 U.S. C. § 51 et seq. It is therein provided, among other things, that every common carrier by railroad under specified conditions is liable for injury or death occurring to employees and " * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works * * * or other equipment."

While negligence is a necessary ingredient of a carrier's liability, Fleming v. Kellett, 10 Cir., 1948, 167 F.2d 265, the duty to use reasonable care in providing a safe place to work is nondelegable, and actual notice of an unsafe condition created by the negligence of another not indispensable. Constructive notice may suffice. Webb v. Illinois Cent. R. Co., 7 Cir., 1955, 228 F.2d 257, reversed on other grounds 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503, rehearing denied 353 U.S. 943, 77 S.Ct. 809, 1 L.Ed. 2d 764; Beattie v. Elgin, Joliet and Eastern Railway Co., 7 Cir., 1954, 217 F.2d 863.

The complaint in the state court action charged that the death of the deceased was directly and proximately caused by the failure of the defendant to provide him with a safe place to work by reason of the requirement that deceased worked in and over a deep pit in an area inadequately lighted. It was further charged in substance that the defendant railroad was negligent (a) in maintaining a hazard in the nature of a trap upon its premises and tracks; (b) in failing to advise and warn the deceased of the

opening caused by the removal of a section of the grating; (c) in failing to provide adequate light in the area when the defendant knew or should have known of the presence of the hopper, and the insufficiency of the grating and that deceased would be unable to see or discover the opening; (d) in failing, through its agents and employees who knew or should have known of the opening, to warn and advise the deceased of the dangerous condition.

The state court instructed the jury upon all of these theories of liability. Whether or not there was evidence to show that the railroad had actual notice of the unsafe condition, it is patent that the jury could have based its general verdict wholly upon the railroad's failure to discover, in the exercise of reasonable care, the dangerous situation allegedly created by the contractors' active negligence. The relative character of the acts or omissions of the railroad, on the one hand, and the contractors on the other, was not determined, nor was the exact nature of the negligence of the railroad beyond the finding which inferred in the general verdict that its negligence in one of the ways charged was sufficient to constitute a proximate cause of Kennedy's death. The necessity for the adjudication of these other problems by the state court, indeed, was precluded by the appellees, themselves, through their successful motion to quash service of process upon them in the attempted third-party proceeding of the railroad.

Even with respect to the alleged failure of the railroad properly to light the premises, which appellees press as unquestionably a charge of "active" negligence precluding indemnity, it should be observed that this would not unavoidably follow, depending upon the evidence that might be produced at the trial and the jury's view of it. It is conceivable that the lighting may have become insufficient only in context with a dangerous condition created by the contractors without actual knowledge of the railroad and that liability of the railroad would have to be related to a failure to discover. Stating this a little differently, the lighting may have been a mere condition, rather than a proximate cause of the accident. This, however is a problem the solution of which must await a trial, and we express no view concerning it except to say that, in common with other questions concerning the character of the railroad's negligence and that, if any, of the appellees it was not necessarily resolved by the state court proceedings.

Appellees have cited some thirty cases in support of various aspects of their argument that by a general verdict all controverted questions of fact, including each and all of the alternate or cumulative theories upon which recovery was sought by Kennedy, were resolved against the railroad (and thus, active or primary negligence as to some of them necessarily established). Broad language may be found in not a few of them lending color to this contention. But when the general statements are understood in relation to the facts and issues of the particular cases, their force in the present litigation largely is dissipated. Several of them concern simply the rule on appeal in the same action, where to sustain a general verdict it will be presumed that the jury found all submitted issues in favor of the prevailing party. In some, specific findings were made on all issues favorable to the prevailing party. At least two involve automobile drivers whose negligence obviously had to be of the same character. Some involve the submission of but one assignment of negligence to a jury, so that the award of damages necessarily would import a finding on that issue favorable to the prevailing party. In one, the defendant was charged only with passive negligence, so that the binding effect of the former judgment based upon negligence of any kind would bar the plaintiff.

The Kansas decisions cited fall within one or the other of the foregoing categories. Lord v. Hercules Powder Co., 161 Kan. 268, 167 P.2d 299; Phillips v. Hartford Accident & Indemnity Co., 157 Kan. 581, 142 P.2d 704; Grigsby v. Jenkins, 183 Kan. 594, 331 P.2d 284.

It must be recognized, however, that certain decisions relied upon by appellees come nearer to the mark and that one or two of them on comparable facts directly support the proposition for which they contend. Hudson Valley Ry. Co. v. Mechanicville E. L. & G., 101 Misc. 152, 166 N.Y.S. 816; City of Puyallup v. Vergowe, 95 Wash. 320, 163 P. 779; Massachusetts Bonding & Ins. Co. v. Dingle-Clark Co., 142 Ohio St. 346, 52 N.E.2d 340; George M. Brewster & Son v. Catalytic Construction Co., 17 N.J. 20, 109 A.2d 805; Public Service Electric & Gas Co. v. Waldroup, 38 N.J.Super. 419, 119 A.2d 172. In the respect mentioned, we are unwilling to follow these decisions although on other phases of the case before us several of them have been instructive and helpful. We think a good statement of the true rule is contained in 30A Am.Jur., Judgments, § 381, which first discusses situations that have been confused by appellees with the one of interest here, and then adds:

> "* * * Also, where the cause for which a judgment was granted may have been one of two or more and there is nothing to show which ground in fact was the basis of the judgment, the judgment is not conclusive upon the parties as to any of the grounds in another proceeding for a different cause. * * *"
> (Citing Cochrane v. Cochrane, 303 Mass. 467, 22 N.E.2d 6, 138 A.L.R. 341.)

Appellant pled in a second claim of the complaint and urges here that, in any event, appellees' breach of their construction contract with the Morrison Grain Co., Inc. entitles it to judgment. It may be true, as contended by appellant, that by paying the judgment in the state court action, it became subrogated to the rights, if any, of its assured, Morrison Grain Co., Inc. as well as to the rights of the railroad against the appellees which it relies upon in the first claim of its complaint. On this basis appellant says that the acts of the appellees in failing to design and construct the hopper were not only acts of negligence but

were breaches of its construction contract which required them to form the openings, ledges and recesses in the concrete supports properly to seat the steel gratings. Morrison Grain Company, however, was not sued, nor was it called upon to pay the judgment. As subrogee of Morrison Grain Company, appellant would have no greater rights than Morrison Grain Company had as against the appellees, which would be none, as far as the record discloses.

In similar vein, appellant points to the undertaking of the appellees with the feed company to carry and maintain liability insurance to protect the parties from claims of workmen and others due to the execution of the agreement. Because appellees failed to procure such insurance, it is contended that a claim exists for damages for breach of contract in the amount appellant was required to pay in settlement of the state court judgment.

If there were a valid claim under the circumstances, it would be limited in amount to the premium which Morrison Grain Company paid for its own policy of insurance which was issued by the appellant. Except for that premium, Morrison Grain Company through whom appellant claims its rights in this respect, suffered no damage, for appellant discharged the obligation of the Morrison Grain Company under its side track agreement with the railroad. Standard Oil Company of Texas v. Wampler, 5 Cir., 1955, 218 F.2d 768; L. W. & P. Armstrong, Inc. v. The Mormacmar, 2 Cir., 1952, 196 F.2d 752. The cases cited by appellant which allowed recovery for the full amount of the damage such as in Beam v. Green, 208 Okl. 10, 252 P.2d 444 and Valdez v. Taylor Automobile Company, 129 Cal.App.2d 810, 278 P.2d 91, are distinguishable because they did not involve the procurement of other insurance by the claimant which covered the same risk and protected him from loss except for the premium.

Even the premium cannot be recovered by appellant under the circumstances of this case on the theory

**190**

presented in the second claim of its complaint. The contract between the Morrison Grain Company and appellees did not contemplate that appellees would provide insurance to cover the grain company's contractual liability to the railroad. It was after the execution of the contract between appellees and the Morrison Grain Company that the latter agreed with the railroad to defend, indemnify and save harmless the railroad from and against all liability, judgments and expenses resulting from the use of the track. The prior contract between Morrison Grain Company and appellees did not mention, nor did it imply, this assumption by contract of the railroad's liability to its workman. Bedal v. Hallack & Howard Lumber Company, 9 Cir., 1955, 226 F.2d 526; Southern California Gas Co. v. Ventura Pipe Line Const. Co., 150 Cal.App.2d 253, 309 P.2d 849.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.