**Don NIVENS, Plaintiff-Appellee,**

v.

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Defendant-Appellant.**

**No. 28251.**

United States Court of Appeals, Fifth Circuit.

April 16, 1970.

Rehearing Denied May 20, 1970.

Jack W. Flock, Clyde W. Fiddes, Roy Cosper, Tyler, Tex., for defendant-appellant.

Franklin Jones, Jr., Franklin Jones, Sr., Marshall, Tex., for plaintiff-appellee.

Before WISDOM, GOLDBERG and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge.

The St. Louis Southwestern Railway Co. (the railroad) appeals from a jury verdict holding it liable under § 1 of the Federal Employers' Liability Act[1] (the Act) for injuries incurred by one of its brakemen, the appellee (Nivens) in a train derailment. The accident occurred when the appellant's train ran aground in a drainage culvert which had washed out in a rainstorm.

Nivens' suit sought alternative bases for finding the railroad liable (1) that the railroad was negligent in permitting its employees to work in an unsafe place, i.e., upon a defectively designed roadbed, and (2) that the railroad was negligent in permitting its train to run in light of dangerous weather conditions. The railroad defended on the grounds that (1) it did not own the track, the track being under lease from Southern Pacific, and that it was not liable for a design, even if found to be defective, prior to the lease; and that (2) the torrential rainstorm was an unforeseeable act of God.

A general verdict was returned finding the railroad negligent and awarding Nivens damages in the amount of $109,040.80.

I

The railroad first contends that the trial judge erred in charging the jury that it was responsible under the Act for the conduct of Southern Pacific in the "maintenance or design" of the roadbed, if that conduct were found negligent. The court charged that the railroad would be responsible because the track was being used by the appellant "for its benefit and in furtherance of its operational activities" (also no doubt reflecting the stipulation that the appellant railroad was 96% owned by Southern Pacific[2]). The railroad maintains that if the design of the roadbed was negligent, the negligence was complete seven and one-half years before it leased the roadbed. It could not have had an opportunity to exercise due care in regard to the track at the time the design was formulated, thus it could not have known that the faulty design created an unsafe place to work.

1. This FELA suit is grounded solely upon the negligence provisions of § 1 of the Act, 45 U.S.C. § 51, which provides in pertinent part that a common carrier by railroad shall be liable for

"injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed * * * or other equipment."

Damages awarded Nivens for injuries to his back are not in issue. Nor is it disputed that the appellee was an employee of the railroad and was engaged in work for the railroad at the time of the accident. With the exception of the roadbed, the condition of the railroad's equipment is similarly not in issue.

2. Southern Pacific is stipulated to be the owner of the track in question for purposes of this suit, although the lease of the track to the appellant shows Texas & New Orleans R. R. to be the owner.

The railroad characterizes the nature of its responsibility, and thus the nature of this suit, erroneously.

■ The standards of liability for negligence under § 1 of the Act are significantly broader than in ordinary common-law negligence actions. The Supreme Court has succinctly stated the now settled principles that in these cases,

"the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * *. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes * * *. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit." Rogers v. Missouri Pac. Ry., 352 U.S. 500, 506–508, 77 S.Ct. 443, 449, 1 L. Ed.2d 493 (1957).

■ Since the Act explicitly makes an employer liable if an injury results only in part from his negligence, the common-law proximate cause standard is modified, and the employee has a less demanding burden of proving causal relationship. Hausrath v. New York Cent. R. R., 401 F.2d 634 (6th Cir. 1968); cf. Lindauer v. New York Cent. R. R., 408 F.2d 638 (2nd Cir. 1969). Moreover, the defense of assumption of risk is eliminated under § 4 of the Act, 45 U.S. C. sec. 54, and the employee's contributory negligence does not bar recovery if the employer's negligence contributed in any way to the employee's injury, § 3 of

the Act, 45 U.S.C. § 53. However, the plaintiff still has the burden of proving a hazardous condition, Inman v. Baltimore & O. R. R., 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959), and that the employer, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury; foreseeability is "an essential ingredient" of negligence under the Act. Gallick v. Baltimore & O. R. R., 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). But actual notice of an unsafe condition is unnecessary. Constructive notice may suffice. See Security Ins. Co. v. Johnson, 276 F.2d 182 (10th Cir. 1960), and cases cited at 187. In short, the principles that the employer is not an insurer of its employees' safety, and that negligence is not presumed merely by proving an injury, are still viable. Employer negligence is still mandatory for recovery under the Act.[3]

■ The instant case concerns what is probably the most common conduct sought to be proved negligent in cases brought under the Act: the alleged failure of the employer to use reasonable care in furnishing his employees with a safe place to work. Although the railroad construes this case as involving different principles, it does not dispute the settled premise that under the Act, an employer has

"the nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control." Shenker v. Baltimore & O. R. R., 374 U.S. 1, 7, 83 S.Ct. 1667, 1672, 10 L.Ed.2d 709 (1963).

This duty includes a duty to inspect the third party's property for hazards and to take precautions to protect the employee from possible defects. Although

3. It might be noted that this burden is distinguishable from the less onerous proof required for recovery in actions based on violations of the Safety Appliance Act, 45 U.S.C. §§ 1–16. Although the cause of action for injuries created by § 1 of the FELA embraces suits based on the Safety Appliance Act, it is settled that in those actions the employee is required to prove only a statutory violation, and need not prove negligence. See, e. g., Crane v. Cedar Rapids & I. C. Ry., 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969).

an employee may be on another's property for only a short time, and although the employer may have no supervision over the property, there is no de minimus rule. The "brevity of the sojourn" is irrelevant with respect to the duty to provide a safe place to work, even though the opportunity to discover defects is obviously seriously lessened. The employer may protect itself by simply refusing to permit its employees from going on the property. Id. at 10, 83 S.Ct. 1667.

One rationale for the stringency of this rule is that if the employer were not held liable for injuries occurring on property not under his direct control or responsibility,

"the railroads, by the simple expedient of doing each other's work, could tie their employees up in legal technicalities over the proper railroad to sue for injuries and perhaps remove from coverage of the Act a significant area of railroad activity." Id. at 11, 83 S. Ct. at 1673.[4]

The significance of the foregoing to this case is that even if Southern Pacific were to be considered an aloof third party, its negligence in designing the track roadbed prior to leasing it to the railroad, or its failure under the lease agreement to properly maintain the roadbed, may not absolve the railroad for its separate and distinct statutory duty to provide its employees with a safe place to work. This duty involves a wholly independent inquiry; the distinction is well illustrated by the following case.

In Kennedy v. Pennsylvania R. R., 169 F.Supp. 406 (W.D.Pa.1959), a jury held the railroad liable for damages to the plaintiff for injuries he sustained in a derailment, based upon its finding that the railroad was negligent in failing to provide the plaintiff with a safe place in which to work. The derailment occurred at a track crossing owned by United States Steel, against whom the railroad sought indemnity. The jury found that USS was responsible for maintaining the crossing, and that the crossing had become unsafe through the acts of USS without fault on the part of the railroad. However, that issue was treated separate and apart from the railroad's failure in its nondelegable duty to provide the plaintiff with a safe place to work. The crossing having been found unsafe, the railroad was held liable to the plaintiff. On motion for new trial, that portion of the judgment was only lightly pursued. The third-party action was the primary source of contention, the court awarding indemnity to the railroad against USS on the basis of an unwritten agreement, and affirming the jury verdict in favor of the plaintiff.

On Appeal the Third Circuit reversed, holding the jury findings not fully determinative of the indemnity question. Although the plaintiff's judgment was not appealed by the railroad, the court drew the distinction between the main action being governed by the FELA, and the third-party action being governed by state law. The court observed that in the absence of a specific agreement requiring the steel company to maintain the tracks, recovery over by the railroad might be barred under state law. It is implicit, however, that regardless of whether there was an express agreement or not, the employee could recover from the railroad under the FELA; the railroad-USS squabble could in no way weaken that judgment. Kennedy v. Pennsylvania R. R., 282 F.2d 705 (3rd Cir. 1960).

The *Kennedy* holding clearly demonstrates, with regard to the instant case, that the respective responsibilities between the railroad and Southern Pacific are irrelevant with regard to Nivens' cause of action. In this respect, as far as the maintenance element in the

4. This policy reflects § 5 of the Act, 45 U.S.C. § 55, which provides that
"any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."

court's charge is concerned, Southern Pacific's failure to maintain the tracks would not defeat Nivens' claim against the railroad, even if the lease made Southern Pacific's duty absolute. The most that the railroad could claim is indemnity from Southern Pacific for failing to meet its contractual obligation. It is not surprising, of course, that in view of their corporate relationship a third-party action was not filed.

 The railroad's attempt to hide behind another's negligent design fails for similar reasons. The third-party's negligence in no way lessens the railroad's duty to provide a safe place to work. The railroad's argument that it could not have known of the faulty design at its inception evades the issue; the date the roadbed was designed is of no importance. The railroad had a positive duty to inspect and to discover defects from the date it permitted its employees to travel on the roadbed. Although the bulk of the evidence clearly proved that the design of the roadbed was faulty, the same evidence just as clearly proves that the railroad had constructive, if not actual, notice of the defect long before the accident. Its duty under the act to correct it, or to refuse to permit its employees from working upon it, is settled.

 The court's charge imputing responsibility for design to the railroad was therefore unnecessary, but it is hardly questionable. Liability may be imposed on a railroad for a third-party's negligence while "engaged in furthering the operational activities" of the railroad. The third party's activities are considered a part of the railroad's "total enterprise". The rationale is arguably applicable to third-party negligence occurring before the railroad gains the benefit of the third party's activities. Cf. Sinkler v. Missouri Pac. R. R., 356 U.S. 326, 331, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). But even if that portion of the charge erroneously imputed prior negligence of Southern Pacific to the railroad, the evidence overwhelmingly proved that the railroad was negligent in providing a safe place to work, and that element was charged. That Nivens' counsel pursued the more difficult theories of defective design and imputed negligence does not detract from the other proofs, which were properly charged. Any employer negligence, however small, would be sufficient to award the plaintiff his verdict. Since there was abundant evidence from which the jury could have concluded that the railroad knew or should have known of the defect; that it failed to correct it; and that it therefore permitted Nivens to work in an unsafe place, the verdict should stand.

> "Only when there is a complete absence of probative facts to support the conclusion reached [by the jury] does a reversible error appear." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); cf. Dennis v. Denver & R. G. R. R., 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963).

## II

It is next contended that the court erred in instructing the jury that if the railroad was negligent in permitting its train to run under the circumstances, and even if the rainstorm were found to be an act of God, verdict should be for the plaintiff. The railroad maintains that the charge does not rest on evidence that it had even constructive notice of the storm conditions, thus it could not know that it should stop running its train, or foresee that the track would wash out.

 We pretermit any extended discussion on this point, since the evidence clearly showed that the railroad had legally sufficient notice that the roadbed was unsafe and might wash out. In light of this knowledge, its conduct in permitting its trains to run long before the accident, and even in dry weather, was negligent under the Act.

Whether the storm on the date of the accident was unprecedented, and wheth-

er the railroad knew of the storm or could have foreseen that a washout might occur that night, are therefore irrelevant. The point is that the train ran upon a track that was unsafe, and that the railroad permitted the unsafe condition to exist.

### III

The railroad's last contention is that the court erred in admitting, over objection, hearsay testimony of one S. H. Pippin concerning knowledge of the defective roadbed. The railroad maintains that this testimony imputed notice by Southern Pacific of the defect to the railroad, even though Pippin's communications to Southern Pacific took place 10 years before the railroad began using the track. Pippin's testimony related to washouts which occurred or almost occurred at the point of the accident in 1920, 1942, and 1947, including his recommendation to Southern Pacific officials that a large trestle be built to replace the small culvert. Mr. Pippin testified that he had never talked with a representative of the railroad as to what he thought about the adequacy of the drainage structure.

The appellee contends that his case is as well off without Pippin's testimony as it is with it; Pippin's testimony was merely cumulative to evidence offered by the railroad. The railroad offered exhibits containing correspondence between Southern Pacific agents which reflect that the agents had considered, but had decided against, replacing the culvert with a trestle. Evidence as to the earlier washouts was admitted without objection from the railroad.

We find the appellee's position to be meritorious, and conclude that the admission of Pippin's testimony was not error.

The evidence offered by the railroad pertaining to the suggestions to build a stronger crossing would warrant the jury's conclusion that the railroad had constructive notice. More importantly, however, the evidence that the crossing had washed out in the past was sufficient for the jury to conclude that the railroad had actual notice that the culvert was inadequate, and that the crossing was therefore unsafe. Since the jury may use any evidence it wishes to arrive at its verdict, whether knowledge was imputed to the railroad need not be reached. Moreover, a railroad has the duty to inspect for defects. With only a little inspection of Southern Pacific's files, it would have had actual knowledge of the danger. With the information there, the jury could conclude that the railroad failed in its duty to inspect, resulting in the injury.

In sum, we conclude that there was sufficient evidence of negligence to justify submission to the jury, and that there was no reversible error in the charge. Accordingly, the case is

Affirmed.