**Hector DURON, a single man, Plaintiff,**

v.

**The WESTERN RAILROAD BUILDERS CORP., a Utah corporation doing business in the State of New Mexico; Southwestern Railroad Company, Inc., a Utah corporation, d/b/a Southwestern Shortline Railroad Company, Defendants.**

**No. CIV 93–0421 LH/WWD.**

United States District Court, D. New Mexico.

June 16, 1994.

Edward L. Chavez, Carpenter & Chavez, Albuquerque, Lloyd L. Rabb, Dickerson, Butler, Rabb & Rodriguez, Tucson, AZ, for plaintiff.

John S. Thal, Atkinson & Thal, Albuquerque, NM, for defendants.

### MEMORANDUM OPINION

HANSEN, District Judge.

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Docket No. 112) filed on April 8, 1994. Having reviewed the memoranda of the parties and their exhibits, and being fully apprised of the applicable law, the Court **FINDS** that Defendants' motion is well taken and should be granted.

### Standard for Summary Judgment

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Rule 56 of the Federal Rules of Civil Procedure provides that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. Upon such a showing,

[The] adverse party may not rest upon the mere allegations or denials of the [movant's] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Rule 56 further requires that

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Fed.R.Civ.P. 56(e).

### *Defendants' Motion*

This is a negligence action brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"). Plaintiff, Hector Duron (hereafter "Mr. Duron" or "Plaintiff"), injured his left hand while working for Defendant Southwestern Railroad Company (hereafter "Southwestern"). Plaintiff's complaint alleges that Defendants "negligently failed to provide Plaintiff with a safe place to work, safe equipment, and/or adequate assistance and equipment to perform his employment duties." Complaint, ¶ VI at 2. Plaintiff also alleges that Defendants negligently failed to "train and educate Plaintiff in the performance of his employment duties and failed to provide appropriate warning of the conditions to which Plaintiff was exposed." Complaint, ¶ VI at 2.

In moving for summary judgment, Defendants assert two arguments. First, they argue that even if Defendants were negligent in not properly training or warning Plaintiff (which they deny), such negligence was not the proximate cause of Plaintiff's injuries because Plaintiff was already well aware of the hazard which caused his injury. Second, Defendants contend that his injury was not reasonably foreseeable because Defendants'

management and employees had consistently observed Plaintiff's ability to safely perform his duties, and it was not foreseeable that Plaintiff would disregard his training and experience and put his hand in a dangerous spot.

■ The case law is clear that under an FELA action, the standards of liability for negligence are significantly broader than in ordinary common law negligence actions. *Nivens v. St. Louis Southwestern Ry. Co.,* 425 F.2d 114, 118 (5th Cir.1970). With regard to FELA cases, the Supreme Court has stated that,

[T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * *. It does not matter that, from the evidence, the jury may also with reason on grounds of probability, attribute the result to other causes * * *. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit.

*Nivens v. St. Louis Southwestern Ry. Co.,* 425 F.2d 114, 118 (5th Cir.1970) (*citing Rogers v. Missouri Pac. Ry.,* 352 U.S. 500, 506–508, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957)).

Because FELA

explicitly makes an employer liable if an injury results only in part from his negligence, the common-law proximate cause standard is modified, and the employee has a less demanding burden of proving causal relationship.... However the plaintiff still has the burden of proving a hazardous condition, and that the employer, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury; foreseeability is an essential ingredient of negligence under the Act.

*Nivens,* 425 F.2d 114, 118 (citations omitted).

■ With specific regard to causation, however, proof that the employee's own negligence was the SOLE cause of his or her injury is a valid defense because it eliminates

the possibility that the employer contributed in whole or in part to the injury. *Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361, 364 (7th Cir.1992). Hence, where there is a zero probability either of employer negligence or that any such negligence contributed to the injury, then the district court is justified in withdrawing such issues from the jury's consideration. *Id.*

With regard to Defendants' first basis for summary judgment, that Defendants' actions were not the cause of the injury, they contend that Plaintiff's own negligence was the sole cause of his injury. Having reviewed Defendants' motion, I conclude that Defendants have sufficiently demonstrated the absence of a genuine issue of material fact. Having made such a showing, Plaintiff must come forward with sufficient evidence to show that employer negligence played any part, even the slightest, in producing the injury for which damages are sought. *Hurley v. Patapsco & Back Rivers Ry. Co.*, 888 F.2d 327, 329 (4th Cir.1989).

The following facts, with regard to the causation issue, are uncontested:

On May 16, 1986, Plaintiff (who had graduated from high school and had two years of college) began work as a "brakeman/switchman" for a company called Rail Switching Services ("RSS") in Arizona. While at RSS, Plaintiff learned his job through on-the-job training from more-experienced brakemen. One of the duties of a brakeman/switchman is "cutting" or "uncoupling" railroad cars by means of releasing a coupling device (often referred to as the "knuckle"). The knuckle is like two clasped hands keeping the cars connected. The knuckle, or coupler, is attached to a drawbar which in turn is attached to the railroad car.

Plaintiff was employed by RSS for about one-and-a-half to two months and, during that time, Plaintiff would cut cars on a daily basis. While employed at RSS, Plaintiff never received written safety rules regarding railroad work.

After his one-and-a-half to two months at RSS, Plaintiff transferred to another railroad operation called Copper Basin Railroad. Plaintiff worked full time as a brakeman/switchman at Copper Basin for six months. Again, in this position, he cut cars on a daily basis. After Plaintiff's first six months at Copper Basin, during which time he had been receiving on-the-job training from other locomotive engineers, Plaintiff became an engineer. Plaintiff worked at Copper Basin from about July or August of 1986 until June of 1990.

Even after Plaintiff became an engineer, he would on occasion perform the duties of a brakeman/switchman at Copper Basin. Approximately one year into his employment at Copper Basin, Plaintiff admits he received a copy of a booklet of safety rules regarding railroad work. This booklet described railroad safety, and Plaintiff attempted to read it and understand it. Plaintiff also attended a safety meeting while at Copper Basin. At the safety meeting, a video was shown which covered the same material as contained in the safety booklet. The material was discussed. The booklet and video included material about how to safely couple and uncouple railroad cars.

During his deposition, Plaintiff was specifically asked:

> Question: While you were at Copper Basin Railroad, you understood, didn't you, that your safety rules prohibited you placing any part of your body *on or near the knuckle while the train was in operation*, correct?
>
> Answer: [By Plaintiff] That's right.
>
> Question: And you also understood, didn't you, that your safety rules prohibited you placing any part of your body *on or near the draw bar while the train was in operation*, correct?
>
> Answer: Operation? What do you mean?
>
> Question: Moving?
>
> Answer: While the train was moving?
>
> Question: Yes, sir. That's correct, isn't it?
>
> Answer: That's correct.

Duron Depo. at 116–117 (emphasis supplied).

Hence, Plaintiff admits that prior to working for Southwestern, he already knew that the rules prohibited employees from placing any part of their body on or near the knuckle, or on or near the drawbar while the train was in operation or moving. Plaintiff acknowledges that Copper Basin expected that employees would comply with the safety

rules, and he stated that he always tried to comply.

Plaintiff admits that he knew about "slack action" and that as an engineer he had to be aware of slack action when either slowing or starting up a train. Plaintiff also knew that even after a train had stopped, cars could continue to move in order to take up the slack. Plaintiff also knew about "cushioning devices" which are placed on drawbars to cushion the impact between the cars.

In October of 1988, while at Copper Basin, Plaintiff took a take-home, open-book examination on safety. The test covered, among other safety issues, coupling and uncoupling. The following questions were on the test:

**6. When riding on or in moving equipment, employees must protect themselves from injury which may be caused by—**(Plaintiff correctly answered, Rough starts or stops. Slack action, curve motion or coupling or any unexpected motion.)

**7. When is it permissible to step on couplers, draft gear cushioning devices?** (Plaintiff correctly answered, Never.)

Duron Depo., Exhibit No. 15.

In June of 1990, Plaintiff started work for Southwestern Railroad as an engineer. Despite his duties as an engineer, Plaintiff still occasionally performed the duties of a brakeman/switchman. During his employment with Southwestern, and prior to October of 1991, Plaintiff worked as a switchman on approximately 21 shifts. In the summer of 1991, Southwestern gave Plaintiff a safety rule booklet.[1] Plaintiff admits that he read through the booklet and then at some point he took a take-home, open-book examination on the material. (The test itself is dated October of 1990. Plaintiff testified that he

took such a test in 1991.) The test had the same two questions as listed above, and Plaintiff again answered correctly.

On April 7, 1992, Plaintiff was acting as brakeman/switchman for Southwestern. The train was being brought to a stop. Plaintiff was instructed to uncouple two cars. Plaintiff's exact testimony as to what happened next is as follows:

At that time, I hopped off the train, walked along the train where the cut was to be made. I stepped in between the cars. The train was moving, one, one and a half miles an hour, maybe, at the most, when I stepped in to make the cut. Stepping in between the cars, I reached over to turn the angle cock, and at that time I placed my hand down on the gon, in which I was to sit out in the rip track.

Duron Depo. at 203. Plaintiff was then asked:

Question: And you placed your hand on the drawbar, didn't you?

Answer: I'm not exactly sure where I placed my hand. I don't want to—can't say it was the drawbar where I placed my hand at.

Question: Well, did you place your hand on the cushioning device?

Answer: I didn't know it was a cushioning device. *I placed my hand on the car near the knuckle* to reach over and turn the angle cock.

Duron Depo. at 203 (emphasis supplied).

Clearly, Plaintiff admits that he placed his left hand down on the car *near the knuckle.* At that point, according to the testimony of Plaintiff's expert, the slack from the cars was taken up and the action compressed upon the knuckle where Plaintiff had his hand. Plaintiff suffered a crush injury.[2]

---

1. The rule booklet, entitled "Safe Work Practices," contained the following:

    **# 11 When crossing over standing equipment:**

    .    .    .    .    .

    C. **Remember**—never place any part of your body between coupler horn and end sill, regardless of whether car is equipped with standard draft gear arrangement, sliding sill arrangement or end-of-car cushioning device.

    **# 12 When crossing over moving equipment:**
    A. You are **never** permitted to cross over moving equipment except on engines or cabooses.

Duron Depo., Exhibit No. 7.

2. Plaintiff admits that he stepped between the two cars while the train was still moving at a *speed of one to one-and-a-half miles per hour.* Plaintiff's expert has conceded that it is an obvious hazard (and strictly prohibited) for a railroad employee to step between two railroad cars while a train is moving. The expert testified that, based upon his own discussions with Plaintiff, Plaintiff knew that one should not step between two cars that are moving.

Plaintiff's injury resulted from his hand being in a hazardous location. Plaintiff's counsel argued, at the hearing on the motion for summary judgment, that because Plaintiff had such limited experience as a switchman and because he had not been properly trained by Defendants, he did not know that the area of the train upon which he placed his hand was dangerous. Specifically, counsel stated that Plaintiff did not know that the type of train in question had a cushioning device and that Plaintiff placed his hand on the cushioning device.

The evidence presented through Plaintiff's own deposition testimony is that Plaintiff had worked as a full-time brakeman/switchman for approximately eight months. During that time, he would uncouple cars on a daily basis. Even after Plaintiff became an engineer, a position he held for about five years prior to his injury, he would on occasion act as a brakeman/switchman. In fact, Plaintiff admits that in 1991 he worked 21 shifts as a brakeman. The evidence also clearly shows that prior to the accident, Plaintiff knew that he should not place any part of his body on or near the knuckle or drawbar while the train was moving. Plaintiff admits, however, that when he went to uncouple the cars, he stepped between two moving cars and placed his hand on the car near the knuckle.

Even if Defendants were negligent in failing to adequately train and warn Plaintiff not to place his hand near the knuckle, such negligence did not cause Plaintiff's injury because Plaintiff *already* knew, and has admitted that he knew, that the safety rules prohibited him from placing any part of his body on or near the knuckle or drawbar. In any event, Defendants did provide Plaintiff with a safety rule booklet in 1991. In that booklet, which Plaintiff admits that he read and was tested on, Plaintiff was specifically warned as follows:

**Remember:** Never place any part of your body between the coupler horn and end sill, regardless of whether car is equipped with standard draft gear arrangement, sliding sill arrangement, or end-of-car cushioning device.

Whether Plaintiff knew or did not know that he was placing his hand on a "cushioning device" and whether it was a dangerous location is immaterial. The critical point is that Plaintiff has admitted that he knew he should not have placed any part of his body on or near the knuckle or drawbar, and that exact location is in fact where Plaintiff placed his hand.[3]

In light of these admissions and the fact that Plaintiff has failed to provide the Court with evidence to show some link between the allegedly inadequate training and his injury, the Court is left with no choice other than to conclude that Plaintiff has not met his Rule 56 burden.

■ In an effort to avoid summary judgment, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment refers to alleged "additional acts by defendant causing injury." Plaintiff's Memorandum at 19. Specifically, Plaintiff contends that the conductor is responsible for the movement of the train and the safety of the crew and that the conductor was negligent in not ensuring that all crew members were within sight. Plaintiff also contends that the train was being operated in a negligent manner in that the brakeman was required to enter between the cars every time a "cut" was required. Finally, Plaintiff contends that he was ordered to make the cut before the train had been brought to a complete stop.

Despite having raised such contentions, the court is not able to address them. As an initial matter, Plaintiff has not alleged such acts of negligence in his complaint. Moreover, the "additional acts" cited in Plaintiff's memorandum do not reference, nor are they supported by, affidavits, depositions, answers to interrogatories or other evidence. In fact, many of Plaintiff's so-called disputed statements of fact cite to portions of depositions which have not been provided to the Court. Plaintiff has clearly failed to comply with D.N.M.LR–Cv 7.3 and 56.1b.

In light of the above, Defendants are entitled to summary judgment on the basis of lack of causation. Having reached this con-

---

**3.** As is made clear by Plaintiff's Deposition Exhibit No. 18, the knuckle is adjacent to the area where it is agreed that Plaintiff placed his hand, be it the cushioning device or some other device.

clusion, the Court does not address Defendants' second contention.

An order in accordance with this memorandum opinion shall be entered.