LOUISVILLE & NASHVILLE RAILROAD COMPANY *v*. DANIELS

No. 43363          February 22, 1965          172 So. 2d 394

(1)

*Hand, Arendall, Bedsole, Greaves & Johnston,* Mobile, Ala.; *Colmer, McGehee & Colmer,* Pascagoula, for appellant.

*Donald Cumbest, George S. Shaddock,* Pascagoula, for appellee.

L‍ee, C. J.

Mrs. Jessie Mae Daniels, in her declaration against Louisville & Nashville Railroad Company, a corporation, charged the following negligence on the part of the railroad company: On June 30, 1963, she was driving her automobile in a southerly direction on Chico

Road having turned from U. S. Highway 90; that she was proceeding at a very slow rate of speed and driving in a careful and prudent manner; that as she proceeded to pass over the railroad crossing, her car struck the first rail on the track, which was protruding to the extent that it created a dangerous and hazardous condition; and that as a result of a sudden stop and severe jolt, she was thrown violently forward against the steering wheel and windshield of the car and sustained severe and painful and permanent injuries. She sued for damages in the sum of $10,000.

The answer of the defendant denied that its rails at the location in question were protruding and created a dangerous and hazardous condition, and denied that it was guilty of any negligence therein. It further gave notice that it expected to prove that the plaintiff was herself guilty of negligence which contributed to the alleged accident.

Mrs. Daniels testified that, about 2:30 o'clock that afternoon, she was driving a 1961 Tempest Pontiac; that her mother and daughter were in the car with her; that it was only about 100 feet from where she turned off Highway 90 south to the crossing; that she slowed down to cross, and just as soon as the front wheels got on the railroad track, the car hit something and came to a sudden stop, throwing her against the steering wheel; and that she saw no object at all in the road to obstruct traffic. She testified that she was taken in a car from the scene of the accident to the hospital, where she was under treatment for six days. She went into great detail as to the nature and extent of her injuries. She was corroborated in regard to her injuries, in a measure, by her husband and a doctor.

On cross examination, she said that she was familiar with crossings in that area and that she had been over this one before. She identified the defendant's exhibits 1 and 2 and said that the photographs fairly and ac-

curately represented the scene at the crossing as it existed on the day she passed over it insofar as she could tell.

Two photographs, over the defendant's objections, were introduced in evidence by Dan Harbison, working for Ingalls Shipbuilding Corporation as a draftsman. He was requested by the plaintiff's husband to make pictures of the Chico crossing on June 30, 1963. He did not testify that either the plaintiff or her mother, or her daughter, or the operator of the wrecker, who allegedly picked up the damaged car, or any other person at the scene at the time, pointed out the place where the plaintiff claimed that the accident occurred. It was about 8:15 to 8:30 that night when he took the photographs. He used a Rolloflex 120 camera with a flash attachment, and he photographed the section of the crossing on the righthand side, facing south on Chico Road. He said that he picked up as much detail therefrom as he would have done in broad daylight. He explained that shadows are produced by the direction of the light that is used. If the sun is coming from the south, the shadow on that side is larger. He was only 10 or 15 feet from the track, with his camera facing south. Obviously then, the shadow in the picture was larger, and greatly exaggerated the height of the north rail. That was the one, going across the track on the righthand side, shown in the picture. He said that he observed that the rails of the track were above the roadway, but he would not be definite as to the number of inches. He did say, however, that, if a straightedge were extended back to the blacktop, a depression could be seen that "might be a 4 or 5 inch hole there". He referred to a piece of timber next to the blacktop as a washout which left a hole. On cross examination, he admitted that he did not use any accurate measurements.

It was shown that the 1961 Pontiac Tempest, which the plaintiff was driving, was of average height.

The two employees of the railroad, in charge of the inspection and upkeep of the track and maintenance of the crossing, testified that the railroad's exhibits, 1 and 2, accurately showed the condition of the crossing on June 30, 1963, the date of the alleged accident, and that there was no 5 inch hole, or other depression therein.

At the close of the evidence the jury returned a verdict for the plaintiff in the sum of $3,000 and the railroad company has appealed.

On this appeal the railroad company assigns a number of errors. The Court will respond to only those which it deems to be necessary.

The appellant contends that plaintiff's two photographs with reference to the crossing were not shown to be accurate and faithful representations of the scene. The contention is made that they were not taken so as to depict the condition at the time of day, the daylight hours, when the accident occurred; and that they only reflected a corner, and not the entire crossing where the accident occurred.

The decisions are to the effect that photographs do not necessarily have to depict the exact condition at the time. They are sufficient, if the general layout is unchanged. Orr v. Columbus & Greenville Ry. Co., 210 Miss. 63, 48 So. 2d 630 (1950). But it must be remembered that, in the present case, the general layout was not depicted in the photographs. They attempted to account for only an isolated part thereof.

In the case of Gulf, Mobile & Ohio R. Co. v. Golden, 221 Miss. 253, 72 So. 2d 446 (1954), the accident occurred in the nighttime. The pictures, which the railroad sought to introduce, were taken seven and one-half hours later, in the daytime. The trainmaster testified that the pictures accurately described the condition at the time that they were taken, but he of course was not there at the time of the occurrence of the accident and did not claim to know the condition at that

time. Consequently the plaintiff's objections were sustained by the trial court. On appeal, this Court did not decide the exact question because the pictures were not forwarded to the Court as part of the record, and the Court did not see them. However, the opinion did make these observations at page 263 as follows:

"The rule is that, 'Before a photograph may be admitted in evidence, it must be shown by extrinsic evidence to be a true and faithful representation of the place or subject it purports to represent *as it existed at a time pertinent to the inquiry.*' 32 C. J. S., p. 620, Evidence, par. 715. The material inquiry is whether or not the photograph is a fair and accurate reproduction and representation of conditions *as they existed at the time of the collision involved.* Cinderella Foods, Division of Stevens Industries, Inc. v. Miller (Miss.), 52 So. 2d 641; Wheat v. Teche Lines, Inc., 181 Miss. 408, 179 So. 553.

"*The time* at which a photograph offered in evidence was taken *is important* only with reference to the question of probability of change in condition of the object or objects portrayed. The mere fact that a photograph was taken at a time different from that in question does not render it inadmissible *if the witness is able to verify it as a substantial representation of the conditions as they existed at the time in question.* Nor does the fact that the conditions were somewhat changed before the photograph was taken render the photograph inadmissible if the changes were not material, and if the changes are carefully pointed out and brought to the jury's attention. 20 Am. Jur., p. 611, Evidence, par. 731.

"In the case that we have here, however, Horn did not testify that the *conditions that existed at the time the photographs were made were the same as* the conditions that existed at the time of the collision involved. *Nor was it shown by the testimony of any other witness that the conditions were the same.* Under these circum-

stances, we are unable to say that the trial judge was in error in refusing to admit the photographs in evidence." (Emphasis supplied). See also Flora v. Fewell, 241 Miss. 345, 131 So. 2d 187 (1961).

In other words, the appellant's two photographs, exhibits 1 and 2, were admitted by the parties, including the appellee herself, to be fair and accurate representations of the general layout.

██ ■ The two photographs of the appellee do not fairly represent the general layout and were not shown to represent fairly the condition at the time of the appellee's alleged injury. The differences and effects between these two sets of photographs, are so great that the probative value of the appellee's representations was presented in such a way as to exaggerate it altogether out of proportion to their real worth. It was error to admit these two photographs. Their admission was highly prejudicial and damaging.

The issue of liability turned on the question as to whether the appellant complied with the requirement of Mississippi Code Annotated section 7779 (1957) in the discharge of its duty in regard to this crossing. ██ ■ The Court recognizes that a wide latitude of discretion must be left to the trial court in the admission of photographs, 20 Am. Jur., *Evidence* section 1204, pp. 1054-5; but, under the unusual facts heretofore stated, the Court is of the opinion that the admission of those two pictures for the appellee cannot be permitted.

The Court is of the opinion that the peremptory instructions, requested by the appellant, were properly refused; and that there was no error in the action of the court in granting and refusing other instructions, as submitted by the parties.

Error is assigned because of the court's refusal to grant a continuance of this cause. No response is necessary in this instance as such a situation presumably cannot occur again.

Viewing the evidence in its entirety with particular reference to the error in the admission of the plaintiff's exhibits 1 and 2, the Court is of the opinion that the cause must be, and it is, reversed and remanded for a new trial.

Reversed and remanded.

*Ethridge, Rodgers, Jones and Patterson, JJ.,* concur.