356 So.2d 584 (1978)
Mrs. Loyce LOWERY
v.
ILLINOIS CENTRAL GULF RAILROAD and J.E. Newman.
No. 50157.
Supreme Court of Mississippi.
March 22, 1978.
*585 J. Harold Graham, Jr., Robert W. Lawrence, Crystal Springs, Arrington & Arrington, Hazlehurst, for appellant.
Wise, Carter, Child, Steen & Caraway, William M. Dalehite, Jr., Jackson, for appellees.
Before SMITH, ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
Mrs. Loyce Lowery filed suit in the Circuit Court of Copiah County against Illinois Central Gulf Railroad Company and J.E. Newman, engineer, seeking damages for personal injuries sustained in a crossing collision. A jury verdict and judgment were entered in favor of the defendants, and Mrs. Lowery appeals here.
Appellant assigns the following as error committed in the trial of the case:
(1) The court erred in admitting into evidence photographs being Exhibits 5, 6, 19, 20 and 22.
(2) The court erred in refusing appellant's requested jury Instructions Nos. 9 and 11.
(3) The court erred in declining to grant a peremptory instruction for appellant on the issue of liability, and the verdict of the jury was contrary to the overwhelming weight of the evidence.
On March 19, 1975, appellant was driving her automobile in an easterly direction on a rural public road near Hazlehurst, Mississippi. She approached the Damascus Crossing where the tracks of appellee railroad company ran in a northerly-southerly direction. A large "MISSISSIPPI LAW-STOP" sign with an indication under same that there were three tracks of the railroad at said point was situated south of the crossing to appellant's right. Trees, bushes and grass were growing along the west side of the right-of-way for some distance north of the crossing. Ms. Lowery testified that her vision was obscured to the north, that she could not see a train approaching until she was practically on the tracks, that she stopped and then drove to a point within a few feet west of the tracks where she again stopped in order to look north along the tracks. She further testified that she did not hear a train approaching nor did she hear a whistle blow or bell ring.
Testimony of the engineer and brakeman indicated that the whistle was blowing and the bell was ringing for a distance of one thousand (1,000) feet north of the crossing, and that appellant drove about fifteen (15) feet and stopped with her front wheels up to or upon the west rail. At that time, the train was near the crossing and the engineer gave quick blasts of the whistle in order to warn appellant. He applied the emergency brakes, but was unable to stop the train. The front of appellant's car was struck and it was knocked into a ditch on the west side of the right-of-way. The train stopped about two thousand (2,000) feet south of the crossing.

I.
Did the court err in admitting into evidence photographs being Exhibits 5, 6, 19, 20 and 22?
Exhibit 6 was marked for identification only and was not admitted in evidence. Appellant contends that a proper predicate was not laid for the introduction of the photographs in that there was no indication who took the photographs or when they were made. However, each witness by whom the photographs were introduced testified that the same were fair and accurate representations of the scene at the time of the collision, except that grass and bushes were higher on the day of the collision than appeared in the photographs. They were properly and sufficiently qualified for admission by such testimony. L. &. N.R.R. Co. v. Daniels, 252 Miss. 1, 172 So.2d 394 (1965); Gulf Mobile & O.R.R. v. Golden, 221 Miss. 253, 72 So.2d 446 (1954).
*586 Photograph Exhibit 5, objected to by appellant, shows the crossing looking from west to east. Photographs Exhibits 8, 9, and 10, introduced by appellant, show practically the same scene with the Lowery vehicle in the ditch. Exhibits 19, 20 and 22, are photographs of the track beginning at a point north of the crossing. Exhibit 21, admitted without objection, shows practically the same area as is shown by Exhibits 19, 20 and 22. Likewise, Exhibit 7 covers the same area shown in Exhibits 19, 20 and 22, and Exhibit 7 was not objected to.
There is no merit in this assignment of error.

II.
Did the court err in refusing appellant's requested Instructions Nos. 9 and 11?
Instruction No. 9 [Appendix I] told the jury that, if it believed the crossing in question was highly dangerous, and the company had notice thereof and failed to locate reasonably sufficient signals and warnings at such crossing, then the railroad company was negligent. This part of the instruction is vague and speculative. There is no evidence, expert or otherwise, to indicate whether signals or warnings could or should have been placed at the crossing. Further, it is undisputed that two signs, one "MISSISSIPPI LAW-STOP" and another "3 TRACKS" were located at the edge of the right-of-way just south of the crossing and the instruction did not take into consideration those signs.
Instruction No. 11 [Appendix II] dealt with the question whether or not bushes, grass, trees and grade of the tracks caused the view of appellant to be obstructed. Instruction No. 4 [Appendix III] granted appellant covered the same question and submitted for her the jury issue of obstructed view. Also, Instruction No. D-20 granted to appellees covered the issue of obstructed view. When all instructions are read and considered together, the jury was properly instructed on said question. Briscoe v. Jones, 233 So.2d 125 (Miss. 1970); Shields v. State, 244 Miss. 543, 144 So.2d 786 (1962).
Consequently, there was no error in refusing Instructions Nos. 9 and 11.

III.
Did the court err in failing to grant appellant a peremptory instruction on the issue of liability and was the verdict of the jury contrary to the overwhelming weight of the evidence?
Appellant contends that the undisputed testimony conclusively showed that the crossing was blind, unusually dangerous and was the proximate cause of the collision. However, the evidence for appellant and appellees is in direct conflict as to obstructions along the railroad right-of-way and as to how far motorists could see north of the crossing. While some witnesses for appellant testified that motorists could not see any distance north until they were on the tracks, witnesses for appellees testified that at a point fifteen (15) feet west of the track vision of motorists was unobstructed north for a distance of five hundred (500) feet. Appellant also contends that the overwhelming testimony shows the sole and only warning given by the approaching train was one long whistle. There again, the engineer and brakeman testified that the whistle was blowing and the bell ringing for a distance of nine hundred (900) to one thousand (1,000) feet before the train reached the crossing. A witness for appellant testified that she heard one long whistle. Such conflicts are to be determined by the jury and, accepting all evidence favorable to appellee, together with reasonable inferences, and disregarding evidence of appellant in conflict, such evidence was sufficient to support the jury verdict and the requested peremptory instruction was properly refused. Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652 (Miss. 1975). Likewise, the verdict of the jury was not contrary to the overwhelming weight of the evidence.
For the reasons stated, this case is affirmed.
AFFIRMED.
*587 PATTERSON, C.J., SMITH, P.J., and ROBERTSON, SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.

APPENDIX I

"INSTRUCTION NO. 9 FOR THE PLAINTIFF
The Court instructs the jury that if you believe from a preponderance of the evidence that the crossing in question was a highly dangerous crossing and the Defendant railroad company had notice thereof and failed to locate reasonably sufficient signals and warnings at such crossing, then the Defendant railroad company was negligent, and if you belief from a preponderance of the evidence that such negligence, if any, proximately caused or proximately contributed to the accident causing the injuries, if any, to the Plaintiff, then you should return a verdict in favor of the Plaintiff against the railroad company."

APPENDIX II

"INSTRUCTION NO. 11 FOR THE PLAINTIFF
The Court instructs the jury that the test of whether the crossing is unusually dangerous is the ability of a traveler to observe the approaching of a train from the direction from which it is coming; and if you believe from a preponderance of the evidence that the view of the railroad tracks by Plaintiff was obstructed by overgrown bushes, grasses or trees or the deep grade of the hill; then this is negligence. If you further believe that such negligence proximately caused or proximately contributed to the accident causing the Plaintiff's injuries, then you should return a verdict in favor of the Plaintiff against the Defendants."

APPENDIX III

"INSTRUCTION NO. 4 FOR THE PLAINTIFF
The Court instructs the jury that if you believe from a preponderance of the evidence that Plaintiff exercised reasonable care and stopped her car at the crossing not less than 15 feet nor more than 50 feet from the nearest rail, and that Plaintiff's vision was obstructed to the north by a hill overgrown by grasses, trees and bushes, and that Plaintiff's obstructed vision was the proximate cause or contributory cause of the accident, then Defendant was guilty of negligence and you should render a verdict for Plaintiff."