727 So.2d 731 (1998)
ILLINOIS CENTRAL RAILROAD COMPANY, Appellant,
v.
L.A. CLINTON, Appellee.
No. 95-CA-01337 COA.
Court of Appeals of Mississippi.
November 24, 1998.
Rehearing Denied January 26, 1999.
Certiorari Denied March 25, 1999.
*732 Vicki Leggett, Patrick Zachary, Hattiesburg, for Appellant.
Eugene Tullos, Frank Burge, Birmingham, AL, for Appellee.
EN BANC.
DIAZ, J., for the Court:
¶ 1. Illinois Central Railroad Company appeals the jury's finding of negligence and award of damages to the appellee, L.A. Clinton. On appeal, Illinois Central argues (1) that the evidence was insufficient to support the verdict, (2) that the trial court erred in failing to grant a directed verdict, (3) that Illinois Central is entitled to a new trial, and *733 (4) that the cumulative error in this case requires reversal. Finding the appellant's arguments without merit, we affirm.

FACTS
¶ 2. On August 7, 1989, L.A. Clinton, an Illinois Central employee, was assigned the duty of switching out railroad cars at the Georgia-Pacific plant in Taylorsville, Mississippi. His job required him to dismount moving trains, and on the day in question, Clinton stepped down from the train into a washed out area of the walkway and twisted his knee. Clinton testified that the area appeared to be old and that he had previously reported unsafe working conditions in the walkways on numerous occasions. Clinton continued working but notified his employer at the end of his shift that he had suffered an injury. A few weeks later, Clinton began physical therapy, and in October of 1989, he underwent surgery to remove the damaged cartilage from his knee. Although he was still experiencing pain in his knee, Clinton returned to work on January 2, 1990. On March 3, 1992, Clinton filed suit against Illinois Central, pursuant to the Federal Employers' Liability Act (FELA), alleging that his injuries were caused by the railroad's negligence. Following a jury trial, Illinois Central was found to have negligently caused Clinton's injuries, and Clinton was subsequently awarded $431,000 in damages. It is from this verdict that Illinois Central appeals.

DISCUSSION

I. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE VERDICT IN FAVOR OF CLINTON AND DID THE TRIAL COURT ERR IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR A DIRECTED VERDICT?
¶ 3. Because the standards of review for the denial of a judgment notwithstanding the verdict (JNOV) and a directed verdict are the same, Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997), we will group the appellant's first two arguments for discussion purposes. Under the applicable standard,
this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Id.
¶ 4. The Federal Employers' Liability Act (FELA) renders a railroad carrier liable for negligently causing an employee's injury while he or she is employed by the railroad. Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1147 (5th Cir.1995). Therefore, in order to prevail, Clinton must show that he was injured, that the railroad was negligent, and that his injury was caused by the railroad's negligence. Wooden v. Missouri Pac. R.R. Co., 862 F.2d 560, 561 (5th Cir.1989). The test of a jury case is whether "employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought." Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).
¶ 5. In the present case, Clinton testified before the jury that the washed out area where he was injured was approximately fifteen to twenty feet long, twelve to eighteen inches wide, and six to twelve inches deep. He also testified that he had previously notified his employer of defects in the walkways. "The question of negligence is determined by the jury," Presswood v. Cook, 658 So.2d 859, 862 (Miss.1995), and in the present case, the jury concluded that the railroad was negligent in causing Clinton's injury. Viewing the evidence in the light most favorable to Clinton, it is clear that substantial evidence existed in support of the jury's verdict.
*734 ¶ 6. Neither do we agree with the appellant's contention that Clinton's alleged contributory negligence warranted a directed verdict in favor of Illinois Central. The jury was instructed to consider whether Clinton was contributorily negligent in failing to use ordinary and reasonable care in dismounting from the train. The jury rejected the appellant's contention that Clinton was responsible in whole or in part for his injuries. When the facts are in dispute, the jury is given the authority to resolve them, Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996), and this jury did so in favor of Clinton. We will not, therefore, reverse the jury's verdict based upon the appellant's challenge of the sufficiency of the evidence.

II. IS THE APPELLANT ENTITLED TO A NEW TRIAL?
¶ 7. Illinois Central next urges this Court to grant a new trial because (1) the judgment was against the overwhelming weight of the evidence, (2) the appellant was not afforded a fair and impartial jury, (3) the trial court erroneously admitted prejudicial photographs into evidence, (4) the trial court erred in allowing portions of Clinton's doctor's deposition testimony into evidence, and (5) the jury was improperly instructed.
a. Weight of the evidence
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
Herrington v. Spell, 692 So.2d 93, 103 (Miss. 1997) (citations omitted). Clearly, a jury question existed as to whether the railroad was negligent and if so, whether that negligence caused Clinton's injury. The jury answered those questions in the affirmative, and we are not at liberty to overturn their decision absent a finding that their verdict was "clearly erroneous." Id. A careful review of the record reveals no such error; thus, we are not persuaded by the appellant's argument that the jury's verdict was against the overwhelming weight of the evidence.

b. Fair and impartial jury
¶ 8. Illinois Central next argues that it was denied a fair and impartial jury due to the substantial number of potential jurors who had previously been represented by Eugene Tullos, one of Clinton's attorneys. Of the thirty-nine members of the jury panel, fourteen of those jurors and/or their family members had formerly been represented by Tullos. Illinois Central moved to strike the entire panel given the "statistical aberration" in the jury pool. See Toyota Motor Corp. v. McLaurin, 642 So.2d 351 (Miss.1994).
¶ 9. Just as in the case at bar, Toyota originated in the Smith County Circuit Court with Eugene Tullos representing the plaintiff. Id. at 352, 355. Because Tullos had represented a number of the potential jurors in the past, the defendants in Toyota requested that jurors with substantial ties to Tullos be excused for cause and for jurors with less substantial ties to be sequestered and voir dired individually. Id. at 354. In the alternative, the defendants requested more peremptory challenges or a change of venue. Id. The judge partially granted the defendants' motion by excusing all the jurors who had cases presently pending with Tullos, who were related to Tullos, who were financially indebted to Tullos, or who had business dealings with Tullos. Id. Nevertheless, the supreme court found the "statistical aberration" and the potential for undue influence in Toyota to be too great and reversed and remanded the case for a new trial. Before doing so, however, the court cited Mhoon v. State, 464 So.2d 77, 81 (Miss.1985) and Hudson v. Taleff, 546 So.2d 359, 363 (Miss.1989), wherein the court held that given the "statistical aberration" in the jury pool, the trial judge could have done any of the following to alleviate its prejudicial effect: "(1) he could have afforded counsel additional peremptory challenges, (2) he could have increased the size of the available venire as well as affording additional challenges, or (3) he could have sustained at least some of the challenges for cause."
*735 ¶ 10. In the present case, Illinois Central challenged only one juror for cause on the basis that Tullos had represented a member of the juror's family. The court thereafter granted the appellant's challenge. In addition, the trial judge increased each side's peremptory challenges from four to eleven. Clearly, the trial judge in the case at bar recognized the potential for undue influence and corrected it by adhering to the guidelines set forth in Mhoon and Hudson. Accordingly, we refuse to find that the appellant was afforded anything but a fair and impartial jury.

c. Photographs
¶ 11. Illinois Central next assigns error to the trial court's admission of certain photographs depicting the general area of the accident. The appellant especially takes issue with exhibit P-6, the photograph which was taken approximately one hundred and fifty feet down the track from the location of Clinton's accident and which also depicted a culvert filled with water. After recognizing the prejudicial nature of the photograph, the trial judge withdrew it from evidence. Nevertheless, Illinois Central now complains that the judge should have also given the jury a cautionary instruction. However, the appellant failed to request such an instruction during trial. "[T]his Court can only review matters on appeal as were considered by the lower court." Ditto v. Hinds County, Mississippi, 665 So.2d 878, 880 (Miss.1995). Therefore, the railroad's failure to request a cautionary instruction during the trial of this matter precludes appellate review.
¶ 12. Illinois Central also complains that exhibits P-1, P-2, and P-3 failed to depict the specific area of Clinton's accident, and thus the trial court erred in admitting them. However, it is not required that photographs depict the exact condition of the premises at the time of injury. Louisville & Nashville R.R. Co. v. Daniels, 252 Miss. 1, 6, 172 So.2d 394, 396 (1965). "They are sufficient if the general layout is unchanged." Id. The supreme court has held that the admission or exclusion of photographs into evidence is within the trial court's discretion and that decision will stand absent a clear abuse of discretion. Walker v. Graham, 582 So.2d 431, 432 (Miss.1991). Finding no such abuse of discretion, we dismiss this assignment of error as lacking in merit.

d. Expert testimony
¶ 13. Illinois Central next argues that the trial court erred in failing to exclude the deposition testimony of Clinton's treating physician, Dr. Edward Turnbull. According to the appellant, Dr. Turnbull failed to state his opinions to a reasonable degree of medical certainty, and thus his testimony should not have been allowed. The supreme court has stated that a doctor's expert opinion as to causation need only be "expressed in terms of medical probability or possibility." Pittman v. Hodges, 462 So.2d 330, 334 (Miss. 1984). "[A]bsolute certainty is not required... and whenever facts are in dispute, or the evidence is such that fairminded men may draw different inferences, a measure of speculation and conjecture is allowed." Id. Numerous times on direct examination, counsel for Clinton asked Dr. Turnbull for his opinion based upon a reasonable degree of medical certainty, and the doctor responded accordingly. Defense counsel then asked Dr. Turnbull to essentially predict whether or not Clinton would continue to have a significant problem with his knee in the future. The doctor responded that the potential for Clinton to continue to have problems with his knee was present, but that it was also possible for Clinton to have no significant trouble with his knee in the future. Clearly, we do not expect Dr. Turnbull to predict the future, and therefore his inability to conclude with absolute certainty that Clinton either would or would not continue to suffer from his knee injury will not be held against Clinton

e. Jury instructions
¶ 14. Illinois Central also argues that the trial court erred in allowing jury instructions P-1, P-5, and P-8. According to the appellant, the jury was improperly instructed that Illinois Central had actual knowledge of the defective walkways, and the instructions allowed the jury to consider elements of damages which were not supported by the evidence. Jury instruction P-1 reviewed the claims that Clinton had made against the *736 railroad, including Clinton's assertion that the railroad knew of the dangerous condition of the walkways. However, the instruction did not purport to prove that Illinois Central had actual knowledge that the walkways were dangerous. The appellant also claims that instruction P-1 was misleading in that the language did not define what actions constituted negligence. Yet, on the third page of the instruction, the meaning of negligence was explained in detail to the jury.
¶ 15. Illinois Central further submits that the trial court erred in allowing jury instructions P-5 and P-8. The appellant claims that because Dr. Turnbull could not predict for certain whether Clinton would continue to suffer from his knee injury, that the jury should not have been permitted to consider whether Clinton could recover for future damages. We find no error in the trial court's permitting Dr. Turnbull to testify, and likewise we find no error in the court's permitting the jury to consider future damages. This Court does not examine jury instructions in isolation; "rather, they are read as a whole to determine if the jury was properly instructed." Boone v. Wal-Mart Stores, Inc., 680 So.2d 844, 845 (Miss.1996). A combined reading of the jury instructions presented at the trial in this case reveals that the jurors were provided with the direction they needed in order to render a fair verdict. Accordingly, the trial judge committed no reversible error in allowing Clinton's instructions.

III. DOES CUMULATIVE ERROR IN THIS CASE REQUIRE REVERSAL?
¶ 16. While individual errors, not reversible in themselves, may combine to constitute cumulative error, the supreme court has held that "where there was no reversible error in any part, so there is no reversible error to the whole." Coleman v. State, 697 So.2d 777, 787 (Miss.1997). Since Illinois Central fails to raise any issues which contain actual error on the part of the trial court, we refuse to reverse based upon allegations of cumulative error.
¶ 17. THE JUDGMENT OF THE SMITH COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., and THOMAS, P.J., and COLEMAN, KING and PAYNE, JJ., concur.
McMILLIN, P.J., dissents with separate written opinion, joined by HERRING, HINKEBEIN and SOUTHWICK, JJ.
McMILLIN, P.J., dissenting:
¶ 18. I respectfully dissent. It is my opinion that the evidence in this case was insufficient as a matter of law to establish any actionable negligence on the part of the railroad. Unlike Mississippi's workers' compensation laws, FELA retains principles of negligence and requires an employee to demonstrate some negligence on the part of his employer if the employee is to recover damages for a job-related injury. 45 U.S.C. § 51; Illinois Central Gulf R.R. Co. v. Boardman, 431 So.2d 1126, 1130 (Miss. 1983); Mississippi Export R.R. Co. v. Williams, 266 So.2d 28, 32 (Miss.1972); Simpson v. Texas and New Orleans R.R. Co., 297 F.2d 660, 662 (5th Cir.1962).
¶ 19. Clinton's claim of negligence is that the railroad failed to use reasonable care in furnishing him with a safe place to work. The Fifth Circuit has said this is "probably the most common conduct sought to be proved negligent in cases brought under the Act...." Nivens v. St. Louis Southwestern Ry. Co., 425 F.2d 114, 118 (5th Cir.1970).
¶ 20. The railroad, however, is not the guarantor of the safety of its employees. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Its duty is not to guarantee ideal working conditions. It is obligated only to undertake reasonable efforts to provide a reasonably safe working environment for its employees. Thus, it is not sufficient to demonstrate that a hazardous condition existed in the work environment and that this hazardous condition contributed to an employee's injury. In order to establish negligence, the injured employee must show that the railroad permitted that condition to remain after it had actual notice of its existence or after *737 the condition had existed for sufficient time that the railroad, in the exercise of ordinary care, ought to have discovered and remedied the situation. Gulf, M. & N.R. Co. v. Brown, 143 Miss. 890, 895, 108 So. 503, 504 (1926); Sinclair v. Long Island R.R., 985 F.2d 74, 76 (2d Cir.1993); Nivens v. St. Louis Southwestern Ry. Co., 425 F.2d 114, 118 (5th Cir. 1970).
¶ 21. In this case, Clinton reported that he stepped into a washed out area in the walkway beside the track as he was stepping down from a moving train. He said at one point in his testimony that the area was not visible from his station on the train unless he looked straight down. He then explained that safety procedures called for him to be looking ahead in anticipation of disembarking rather than straight down and that, therefore, he did not actually see the condition of the walkway until after he had injured himself. However, elsewhere in his testimony, Clinton said that he inspected the place of his injury the next day and found it to be an area measuring fifteen to twenty feet in length running parallel with the track and six to twelve inches in depth. He offered no explanation as to why a condition such as this would not be readily visible as he approached the area, and admitted that the incident occurred during daylight hours when there was adequate lighting to observe the condition of the walkway. In fact, he testified that, in the two weeks prior to his injury, he had observed several other washed out areas in the same general location and was able to offer an opinion that those other areas appeared, from their general appearance, to have been there for "some time" and that they had "an old look."
¶ 22. Clinton produced no evidence concerning the railroad's policy or procedures relating to inspecting and maintaining the work areas around its various switching devices. There was, therefore, no basis to conclude that the railroad had actual notice of this purported hazard. Thus, in order to make a prima facie case of negligence, Clinton had to produce evidence to support a reasonable conclusion that the railroad had constructive notice of the condition on the basis that, had it exercised ordinary care in inspecting and maintaining this particular area, it would have discovered that the area was washing out. In my opinion, Clinton's testimony that other areas showing signs of washing had "an old look" is not sufficient evidence to make a legitimate jury issue on this point.
¶ 23. Prior case law has suggested that, in a FELA case, there is a relaxed standard of proof on the issue of the employer's negligence. See, e.g., Illinois Central Gulf R.R. Co. v. Boardman, 431 So.2d at 1130; Mississippi Export R.R. Co. v. Williams, 266 So.2d at 32. This line of thought appears to have had its foundation in the United States Supreme Court case of Rogers v. Missouri Pac. R.R. Co., where the Court said that:
[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.... Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.
Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506-07, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).
¶ 24. It is difficult for me to assess exactly what is meant by pronouncements concerning a relaxation in the level of proof the employee must present in support of his claim. Any standard of proof less than a preponderance of the evidence reduces the question of liability to the mere whim of the fact-finder. In my view, the more proper interpretation of the Rogers case is that it was written at a time when contributory negligence still generally acted as a complete bar to recovery in a negligence action and at a time when the fellow servant doctrine shielded an employer from liability for the negligent injury of one of its employees by another employee. FELA had statutorily imposed the then-radical concept of comparative negligence on claims by injured employees and the Rogers decision appears to me to be primarily an exercise in redirecting the *738 thinking of the lower courts on such matters as contributory negligence and the fellow servant doctrine and not a holding that some quantum of proof less than a preponderance can support a finding of negligence.
¶ 25. An appellate court shirks its duty when it relies on loose language about a "relaxed standard of proof" to sustain a verdict when, in actuality, there is no legitimate proof of negligence on the employer's part. In this case, Clinton produced no evidence of negligence other than proof that the elevation of walkway beside the track was something less than it had been at some time in the past. There was no evidence of an industry standard of the proper limits on the distance between the train ladder's bottom rung and the walkway surface. There was no evidence of an industry standard of a particular surface texture for the trackside walkway or even what the actual surface condition was where Clinton claimed to have been injured.
¶ 26. There was no explanation as to why this condition was not readily visible to Clinton nor what there was about the condition that made it particularly hazardous. Certainly, an employee whose job involves the inherently risky task of disembarking from a moving train in all weather conditions is not reasonably entitled to expect that he may blindly step from the train and be assured that the walkway underfoot will be in optimal condition.
¶ 27. Nothing in this record demonstrates with any degree of certainty that this alleged variation from some unspecified ideal was so hazardous that it constituted an unreasonably dangerous work environment for Clinton. Additionally, there is nothing in the record to establish that the condition, assuming it to be hazardous for sake of argument, was known to responsible officials of the railroad who simply ignored it or, alternatively, that the condition had existed for such an extended period of time that those officials, through the exercise of reasonable care, ought to have known of its existence. The absence of such proof left the jury with nothing beyond speculation and conjecture to arrive at a verdict. In my opinion, this verdict ought to be reversed and rendered due to the insufficiency of the plaintiffs evidence of actionable negligence.
¶ 28. Beyond that, it is my opinion that the jury verdict in this case, when considered in light of the evidence of Clinton's injuries, is so unconscionably large as to be against the weight of the evidence, suggesting bias, passion and prejudice on the part of the jury. Therefore, at the bare minimum, this case ought to be reversed and remanded for a new trial. See Wells Fargo Armored Serv. Corp. v. Turner, 543 So.2d 154, 159 (Miss. 1989). The evidence shows that Clinton had arthroscopic knee surgery to repair a damaged meniscus cartilage and that he has since returned to his former employment without any apparent present disability beyond his subjective complaints of pain and his report of a popping sensation from time to time in his knee. The operating physician, testifying by deposition, said that the most significant effect of a removal of a portion of the meniscus is the loss of load distribution on the knee itself. However, he said that, in the typical case, "the loss of stability that's experienced in a pure knee cartilage problem probably is not significant." The physician stated that he had examined Clinton after he had returned to work following the surgery and found "no fluid accumulation to the knee, that he had satisfactory motion, that he had a slight crepitance meaning slight grating sensation behind the knee cap...." He said that he had performed an x-ray at the time and "did not find any abnormality ... in the knee joint...." He testified that he discharged Clinton at the time and had not treated him for problems with his knee at any time since then, though he had seen Clinton at a later date in connection with complaints about Clinton's shoulder. When asked to give a prognosis for Clinton's future problems with his knee, the physician said:
And I think it's really, you know, it's there was nothing in Mr. Clinton's knee that would specifically key me to think that he would go on to a severe degenerative condition. On the other hand I think as you mentioned some symptoms that's not inconsistent, and the possibility exists that he could have a progressive deterioration of the knee. But he might also not have any.
¶ 29. It appears to me that this is not the kind of medical evidence that would support *739 a substantial award of damages based on a reasonable expectation that Clinton will, in the future, suffer additional medical problems with his knee. In order to support an award of damages for anticipated future problems, "[t]he general rule is that where it is established that future consequences from an injury to a person will ensue, recovery therefor may be had, but such future consequences must be established in terms of reasonable probabilities." Entex v. Raspberry, 355 So.2d 1102, 1104 (Miss.1978).
¶ 30. The evidence demonstrated in this case that Clinton suffered lost wages of $31,000. Clinton testified to experiencing pain in his knee, which he claimed to treat with over-the-counter analgesics such as aspirin. The pain was not sufficient to require him to miss work or to seek medical treatment. In my view, this evidence does not reasonably support a damage award of the magnitude of $431,000. Thus, I would conclude that the jury's verdict, even if liability is assumed, was against the overwhelming weight of the credible evidence of damages and I would reverse on that basis, even in the absence of the evident problems regarding liability in this case.
HERRING, HINKEBEIN and SOUTHWICK, JJ., join this separate opinion.