IRVING, J., for the Court:
¶ 1. Ricky Earl Robinson was convicted of burglary in the Circuit Court of Coaho-ma County. He was sentenced as a habitual offender to a term of life imprisonment without parole. Feeling aggrieved of the judgment against him, Robinson appealed and assigned the following issue as error:
APPELLANT CONTENDS THE COURT ERRED IN OVERRULING APPELLANT’S MOTION FOR DIRECTED VERDICT AND SUBSEQUENT MOTION FOR JUDGMENT NON OBSTANTE VERDICTO OR ALTERNATIVELY FOR A NEW TRIAL SINCE THAT [SIC] THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE.
FACTS
¶ 2. At the trial of this matter Angela Troupe, a resident of Wade Walton Apartments in Clarksdale, testified that on September 12, 1996, she encountered Robinson, whom she knew, while returning to her apartment from a visit to her mother. She further testified that she spoke to him and he spoke to her. She testified that Robinson, who also lived at the apartment complex, was standing at the apartment door of Christine Adams. Adams’s apartment was located across from Troupe’s. After Troupe entered her apartment she looked out of her window and saw Robinson use some sort of object on the door of the Adams apartment then use his shoulder to force the door open. She immediately left the window and called the police. She reported that there was a break-in taking place and described the person she saw as wearing white shorts and a white shirt. She did not identify the perpetrator, at that time, as being Robinson. Troupe testified that following this call to the police she returned to the window to see Robinson leaving the Adams apartment with an object, that she was not able to identify, in his hands. She then called the police a second time.
¶ 3. John Chambers, a patrolman with the Clarksdale Police Department, testified that he received the call on September 12, 1996, to go to Wade Walton Apartments to investigate a report of a burglary in progress. The perpetrator, he was told, was a black male dressed all in white. Officer Chambers testified that when he arrived on the scene he immediately recognized Robinson from the description he had been given. He said that he and Robinson looked at each other and Robinson turned to go in a different direction when Robinson noticed that he was preparing to get out of his patrol car. Chambers testified that when he opened the door of his car Robinson started to run between the apartment buildings. Chambers said that he immediately radioed to dispatch that the suspect was running from him and that he was beginning a foot pursuit. At about that same time John Rybolt, Chambers’s police captain, drove up and apprehended Robinson, putting *1142 him in handcuffs. A small chest-like freezer belonging to Christine Adams was later found near the corner of her apartment building.
¶4. At the trial, Robinson’s girlfriend, Debra Hall, testified that Robinson had been home helping her bathe her handicapped son on the night of the burglary. She said that she asked him to go out and get cokes and chips at approximately 9:00 p.m. and, one to two minutes after he left, she saw him under arrest by the police. Troupe testified that she thought that the burglary took place some time between 8:43 and 8:55 p.m. Hall testified that she was certain about the time that Robinson left her apartment. She stated that she gives her son medicine every evening at about 9:00 p.m. and that Robinson was with her at the time she prepared the medicine on the night of the burglary. Hall also testified that approximately thirty minutes before she and Robinson gave her son a bath she went outside to take the trash and saw her neighbor’s boyfriend sitting on the apartment stairs smoking a cigarette dressed in light colored clothing.
¶ 5. Robinson testified in his own behalf that he was with Hall all evening until approximately 9:00 p.m. when he told Hall that he was going out to get snacks as usual. He said that he was on his way to purchase the snacks when he was arrested.
ANALYSIS OF THE ISSUE PRESENTED
DID THE TRIAL COURT ERR IN OVERRULING APPELLANT’S MOTION FOR DIRECTED VERDICT AND SUBSEQUENT MOTION FOR JNOV OR ALTERNATIVELY FOR A NEW TRIAL?
¶ 6. Robinson contends that the verdict is against the overwhelming weight of the evidence. He asserts that his motion for directed verdict and subsequent motion for judgment non obstante verdicto should have been granted because — taking all the evidence in the light most favorable to the State — the State failed to meet its burden of proof.
STANDARD OF REVIEW
¶ 7. The supreme court held as follows in Illinois Central Railroad Company v. L.A. Clinton, 727 So.2d 731, 733 (Miss.App.1998):
Because the standards of review for the denial of a judgment notwithstanding the verdict (JNOV) and a directed verdict are the same, Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997), we will group the appellant’s first two arguments for discussion purposes. Under the applicable standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
¶ 8. In support of his argument that his motions for directed verdict and JNOV should have been granted, Robinson claims that the proof is against the overwhelming weight of the evidence and that there is reasonable doubt based on the following proof: 1) there was not enough time for him to burglarize the Adams apartment and hide the freezer between the time that he left his apartment and the time he was arrested; 2) Troupe failed to identify the burglar to the police dispatcher as Robinson even though she knew him; 3) Robinson presented alibi testimony at trial; 4) no physical evidence that he committed the burglary; and 5) reasonable doubt about Troupe’s identification.
*1143 ¶ 9. At the trial of this matter the State presented eyewitness testimony of Robinson breaking and entering the door of the Adams apartment as well as eyewitness testimony that placed him in possession of property taken from the Adams apartment. The jury heard his alibi testimony and chose to reject it, as it was entitled to do under Burrell v. State, 613 So.2d 1186, 1191 (Miss.1993):
Finally, it is well settled the jury is under no obligation to accept an alibi defense asserted by the accused and his witnesses. Rather, an alibi simply raises an issue of fact to be resolved by the jury. “It is elemental that the State does not have to prove an alibi to be untrue.”
¶ 10. The lack of any physical evidence against Robinson is of no consequence in light of all of the other evidence against him. It is enough to say that the jury, and not the reviewing court, judges the credibility of the witnesses as well as the weight and worth of their conflicting testimony. Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980).
¶ 11. Robinson concluded by charging that the State did not have a greater quantum of evidence favoring their version of the facts and that the State’s case should not have been allowed to withstand a motion for a new trial as distinguished from a motion for JNOV.
¶ 12. The following observations made in Groseclose v. State, 440 So.2d 297, 300 (Miss.1983), quoted in Burrell, 613 So.2d at 1191 are also worth repeating here:
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system, (citations omitted).
¶ 13. The jury’s resolution of the evidence against Robinson did not create an unconscionable injustice, nor was it a product of prejudice, bias, or fraud. The eyewitness identification by Troupe, together with the evidence offered .by the police officers, supports the conviction and flies in the face of any accusation that the trial court abused its discretion in overruling Robinson’s motion for a new trial.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF BURGLARY AS A HABITUAL OFFENDER AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST COA-HOMA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.